No. 27,442.

THE STATE OF KANSAS, *Appellee,* v. J. A. EYTH, *Appellant.*

(260 Pac. 976.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Trial—Time for Requesting Instructions.* The decision in the case of *State v. Bloom,* 91 Kan. 156, 136 Pac. 951, followed to the effect that requested instructions submitted any time before the charge is given to the jury in a criminal case should be considered by the court and should be given or refused on their merits, and *held,* that when so submitted they may be regarded on appeal as having been considered and refused by the trial court.

2. SAME—*Sufficiency of Instructions—Defining Words.* The instructions submitted by the defendant considered, and *held,* no error was committed in the failure of the trial court to give them or any one of them, and that the instructions given were sufficient.

3. SAME—*Sufficiency of Evidence—Uncorroborated Testimony of Accomplice.* The decisions in the cases of *State v. McDonald,* 107 Kan. 568, 193 Pac. 179, and *State v. Bolton,* 111 Kan. 577, 207 Pac. 653, and subsequent decisions followed with reference to the uncorroborated testimony of an accomplice being sufficient to sustain a verdict of guilty.

4. SAME — *Corroboration of Testimony of Accomplice.* The testimony considered, and *held,* that the testimony of the accomplices in this case was not without corroboration.

Appeal from Jackson district court; MARTIN A. BENDER, judge. Opinion filed November 5, 1927. Affirmed.

*J. J. Schenck, W. E. Atchison, C. P. Schenck,* all of Topeka, and *E. D. Woodburn,* of Holton, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *Albert M. Cole,* county attorney, *E. R. Sloan* and *Floyd W. Hobbs,* both of Holton, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: J. A. Eyth, a resident of Topeka, was convicted in the district court of Jackson county, Kansas, of the crime of grand larceny, being charged in the second count of the information with stealing tires, inner tubes, and other personal property belong-

Accomplice, L. R. A. 1915E 122; 9 A. L. R. 1397; 32 A. L. R. 449; 1 R. C. L. pp. 166, 167. Criminal Law, 16 C. J. pp. 694 n. 33, 695 n. 55, 696 n. 60, 697 n. 69, n. 78, 712 n. 30, 962 n. 6, 966 n. 78, 973 n. 87 new, 1000 n. 96, 1013 n. 50, 1017 n. 8, 1031 n. 95, 1032 n. 96, 1062 n. 72 new; 17 C. J. p. 225 n. 63 new. Instructions, 14 R. C. L. pp. 763, 802.

ing to one L. C. Leeth.  It was not contended by the state that the defendant was personally present in Jackson county when the property was actually taken, but that he was an accessory before the fact and that the actual crime was in fact committed by three young men, Henderson, Carson and Karpis.  These three young men, on the afternoon of February 1, 1926, discussed among themselves the plan of stealing tires if they could find a buyer for them.  Two of them then went to see the defendant, a dealer in junk on Kansas avenue near the river.  After a short conversation with him about buying tires they left, and, with Karpis, that night drove over to the town of Netawaka, in Jackson county, and stole twelve tires, a few inner tubes, and other property, brought them to the outer edge of Topeka and hid them in a vacant building.  At 8:30 the next morning they called again on defendant at his place of business.  As to the nature and substance of the conversation the afternoon before there is serious difference and dispute as to their telling him that the tires would be "hot" or stolen tires.  The boys say they so told him.  He and others present say they did not.  They say he promised to buy. He and others present say he did not.  When they returned the next morning they told him they had the tires.  He declined to buy, but suggested a party in North Topeka might purchase them.  Defendant went in his car to North Topeka, brought Hamilton back, and gave him a check for $50.  Hamilton purchased the tires and inner tubes for $30.  The two boys later plead guilty and were sentenced to the reformatory, and came from there to testify in this case on behalf of the state.  They were shown to have been guilty of similar offenses prior to this transaction, and there was evidence introduced to the effect that their reputations were bad.

The defendant contends that the trial court erred in giving the instructions it did and failing to give or refusing to give the instructions requested by the defendant, calling particular attention to the instructions with reference to the uncorroborated evidence of these two accomplices, said to have been discredited, and the use and meaning of the words and terms "accomplice," "aid and abet" and "aid or abet."

In the first place, the defendant criticizes, we think justly, a rule of the trial court which requires the submission of requested instructions not later than the closing of the case of the plaintiff,

under which the court in this case marked the instruction requested by the defendant, "Submitted in violation of rule No. 11 of the court." This court, in the case of *State v. Bloom*, 91 Kan. 156, 136 Pac. 951, held that requested instructions were not submitted too late for consideration in a criminal case if furnished before the charge is given to the jury.

"If, in such case, a request for a proper instruction is made before the charge of the court is given to the jury, it should not be refused on the sole ground of being out of time, notwithstanding any rule of court, but should be considered, and given or refused on its merits." (Syl. ¶ 2.)

The trial court should have considered the requested instructions and either given them or refused to give them. There are certain instructions which are not required to be given unless requested, but in this case none of those requested are pointed out as being such, but are along the general lines upon which the court must on its own motion charge the jury.

"The judge must charge the jury in writing, and the charge shall be filed among the papers of the cause. In charging the jury he must state to them all matters of law which are necessary for their information in giving their verdict. . . ." (R. S. 62-1447.)

Notwithstanding the requested instructions should have been either given or refused, we can with reason and propriety consider them for the purposes of this case as having been considered by the trial court and refused, as that is the practical effect of what was in fact done. This will give the defendant the full benefit of them, as we think he should have had, and we will now consider whether or not there was error in the failure or refusal of the trial court to give them or any one of them.

It is strongly urged by the defendant that the court erred in not giving the jury a definition of the words, "accomplice," "aid," and "abet," and in construing the disjunctive "or" as having more nearly the meaning of the conjunctive "and" in the connection used, all of which matters were suggested in the instructions requested by the defendant. In the first place, the court charged the jury in the exact words of the statute in instruction 10 that "any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal." (R. S. 62-1016.) Then, in instruction 13, the court told the jury that the defendant can only be convicted by aiding and

abetting in the commission of the crime charged, as explained in instruction 10. It is true the word "or" has sometimes been held to mean "and," but never because of any hidden or technical reason, but because the general sense of the phrase suggests it. The court in his instruction here used both words. It is contended that the word "aid" is purely an innocent term and never implies or suggests guilt or wrongdoing; that one might aid another not knowing that a crime was intended or even contemplated at the time. The statute and the court both carefully connected the word with the question of the commission of a crime. It is not concerning the aiding of one generally, but aiding him in the commission of an offense. If a definition of any of these words were necessary it could be readily gathered from the context of the instructions, but they are not unusual words. They occur frequently in everyday reading and are not here used in any technical sense or different from the ordinary use in common parlance.

"It is urged that the word 'aid' is open to more than one interpretation, and therefore, it should have been defined by the court. It is doubtful if the meaning of the term could have been made clearer or aided in any way by a definition. There was no likelihood that the jury would infer that he aided in the commission of arson by doing some innocent act towards its accomplishment." (*State v. McDonald*, 107 Kan. 568, 571, 193 Pac. 179.)

We think the same rule applies as well to the words "accomplice" and "abet."

"But generally speaking, where the matters charged against the accused are stated in ordinary language and in such manner as to enable a person of ordinary understanding to know with what offense he is charged, it is not necessary for the court to enter upon a definition or explanation to the jury." (14 R. C. L. 763.)

Under the following three distinct headings the defendant maintains the court erred in its instructions and in not giving those requested: (1) Where a witness admits having committed the crime he is an accomplice as a matter of law; (2) testimony of a discredited accomplice not sufficient to sustain a verdict of guilty; and (3) corroborating evidence must connect accused with the crime. Reference is made to numerous decisions from other states in support of these positions, which would have greater weight if the questions were new in Kansas. In instruction 12 the court charged the jury as follows:

"The uncorroborated testimony of an accomplice is legally sufficient to

State v. Eyth.

sustain a verdict of guilty, but I instruct you that you should receive and weigh the testimony of such an accomplice carefully and scrutinizingly in connection with all the other facts and circumstances in the case."

In number 13 he charged them as follows:

"Even though you should find from the evidence that the defendant knew on February 1, 1926, that the crime charged in the information was to be committed that night, and did not object thereto, this of itself would not be sufficient to find him guilty of the said charge; for the defendant can only be convicted by aiding and abetting in the commission of the crime charged, as explained in instruction number 10."

In number 5 the usual instruction as to determining the weight to be given the testimony of any witness was given, and in number 4 the jury was charged as follows:

"You are the exclusive judges of all questions of fact and of the weight of the evidence, and of the credibility of the witnesses; and if you find from the evidence that any witness has willfully testified falsely and corruptly to any material fact in the case, then it will be your duty to determine how much or whether the whole of such witness' testimony should be disregarded; but you are not authorized, without cause or reason, to arbitrarily reject the testimony of any witness, but it is your duty to carefully consider, examine, and harmonize, all the testimony in the case upon a basis of truth if you can do so."

These instructions cover, we think, all the essential points necessary to be charged concerning the testimony of an accomplice.

"In *The State v. Patterson,* 52 Kan. 335, 34 Pac. 784, it was decided that the uncorroborated testimony of an accomplice is legally sufficient to sustain a verdict of guilty, but of course the credit to be given to the testimony of an accomplice is a matter for the determination of the jury. And the same rule was applied in *The State v. Bratcher,* 105 Kan. 593, 185 Pac. 734." (*State v. McDonald,* supra, p. 570.)

"The fact that a·witness was an accomplice in the commission of the crime charged, goes to the credibility of his evidence and not to its competency, and if the jury are fully convinced of the truth of his testimony and are fully satisfied that it is sufficient to establish the guilt of the defendant, they may convict upon the uncorroborated evidence of the accomplice." (*State v. Bolton,* 111 Kan. 577, syl. ¶ 1, 207 Pac. 653.)

"Another requested was that a person could not be convicted on the uncorroborated testimony of an accomplice. This was properly refused, as it has been held that the testimony of a witness, although an accomplice, is competent, and if otherwise sufficient will sustain a verdict of guilty. (*State v. McDonald,* 107 Kan. 568, 193 Pac. 179.)" (*State v. McKimson,* 119 Kan. 658, 660, 240 Pac. 567.)

The same doctrine is maintained in *State v. Vandeveer,* 119 Kan. 674, 675, 240 Pac. 407, and *State v. Welch,* 121 Kan. 369, 375, 247

Pac. 1053.   In the recent case of *State v. Logan,* 123 Kan. 743, 256 Pac. 1017, it was held:

"A conviction of one of three persons who participated in the commission of an offense may be based on the uncorroborated testimony of an accomplice, if it is otherwise sufficient." (Syl. ¶ 1.)

The testimony of Henderson and Carson was not in our judgment wholly without corroboration in this case. The return of the two boys the next morning after the larceny indicates that they may have been encouraged to come back after taking the tires. The interest manifested by the defendant in finding a buyer for the tires, the furnishing of the money used by Hamilton in making the purchase of the tires, the getting of a receipt for such money more than a week later, the procuring of the several inner tubes for his own use at once, the voluntary furnishing of a bond and attorney for Hamilton when he was arrested, the testimony of Hamilton and others as to the time and place of furnishing the $50 agreeing with that of the boys and not that of the defendant, are all corroborative of the testimony of Henderson and Carson as to material facts and circumstances in connection with the case. We conclude that the testimony of Henderson and Carson was not without corroboration, that the instructions given were sufficient, that the evidence was sufficient to sustain a conviction, and that no error was committed in failing to give any of the instructions requested.

The judgment is affirmed.