No. 51,990

STATE OF KANSAS, *Appellee,* v. CHARLES EDWARD MOORE, JR., *Appellant.*

(622 P.2d 631)

Opinion filed January 17, 1981.

*Edward G. Collister, Jr.,* of Collister & Kampschroeder, of Lawrence, argued the cause and was on the brief for the appellant.

*Michael J. Malone,* district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Gregory Hammel,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal as a matter of right by Charles Edward Moore, Jr., following his conviction by a jury in Douglas District Court of kidnapping in violation of K.S.A. 21-3420, aggravated robbery in violation of K.S.A. 21-3427, and murder in the first degree in violation of K.S.A. 21-3401. Moore was sentenced to be confined not less than 30 years nor more than life for kidnapping, not less than 30 years nor more than life for aggravated robbery, and to life imprisonment for murder; the sentences for kidnapping and aggravated robbery to be served concurrently, the sentences for kidnapping and murder to be served consecutively, and all sentences to be served consecutively to prior sentences imposed on Moore in the State of Colorado. All of the charges grew out of the abduction, robbery, and slaying of Samuel C. Norwood on November 28, 1977, at Lawrence, Kansas. Many points are raised; each will be dealt with separately in this opinion.

We will first state generally the facts disclosed by the evidence; other facts will be discussed in connection with some of the points raised. Terry Avery, an accomplice of defendant, testified for the State. She left her home in Denver, Colorado, after an argument with her mother, in late November, 1977. She then met the defendant, who asked her to go with him to Lawrence, Kansas, where he planned to get some money from his grandmother. She left Denver with defendant and Lee Harris. The three arrived in Lawrence on November 27 and checked into the College Inn Motel. Avery said that Moore checked in, and then told Avery and Harris that he had registered them in as "Valerie" and "Sam." The three then drove downtown and looked over both the front and the back of the Woolworth store; Moore

pointed out the exits to Harris. They then returned to the motel. The next morning all three went downtown. Moore bought some clothing for Avery at a dress shop, Fads And Fashions. The three then went to Woolworth's to get something to eat. Moore pointed out the store manager, who was sitting at the counter. A waitress recognized Moore, who had worked at the store at one time; she asked about his grandmother. Moore left the restaurant area and bought two tan suitcases. The three then left the store and returned to the motel. Harris went out and returned with a roll of tape. Later, Avery overheard Moore and Harris discussing Woolworth's, and she knew that they intended to rob it.

That evening, all three drove downtown and parked in the lot behind Woolworth's. Moore sent Avery in to the store twice to see how many people were there. The assistant manager testified that Samuel C. Norwood, Woolworth's manager, left the store through the back door about 5:45 o'clock p.m. on November 28. He was carrying a Polaroid SX-70 camera which he had checked out from the store; he was on his way home to his son's birthday party, but he never arrived.

As Avery returned to the car the second time, she saw that Harris had Norwood by the arm. Harris and Moore pulled Norwood into the car and began asking him about the store. Norwood said that there wasn't much money in the store because he had just taken the receipts to the bank. Moore was in the back seat with Norwood, who was on the floor. Moore pulled a cap over Norwood's face, took his wallet from him and gave it to Harris. They then left the parking lot, with Harris driving and Moore giving directions. After several short stops, Moore drove over some railroad tracks and parked the car near some bushes. Avery could hear the sounds of a river. Harris and Moore pulled Norwood out of the car and Avery heard four or five shots. Harris and Moore re-entered the car. Harris, Moore and Avery then drove to Kansas City. Moore threw Norwood's wallet out of the window as they crossed over a viaduct. Harris kept Norwood's watch, and he and Moore kept the camera. They abandoned the car, with the keys in it, near the Kansas City bus station; Avery, Moore and Harris then boarded a bus and rode to Los Angeles.

Norwood's body was discovered in a brushy area just across the railroad tracks near an abandoned sand plant in Lawrence. The spot was close to the Kansas River. Norwood's hands were bound

behind his back with white tape; he was lying face down, and blood was evident on the back of his head. Plaster casts were made of nearby tire tracks. The pathologist who performed an autopsy on the body concluded that death was caused by multiple gunshot wounds to the head. She found four entrance wounds and one exit wound, and five bullet fragments in the brain. She estimated the time of death as between 6 and 8 p.m. on November 28.

Some three weeks later, after she returned to Denver from California, Avery told her story, much as detailed above, to the Denver police. Thereafter, Harris and Moore were arrested. A Polaroid SX-70 camera was found in a suitcase bearing the name "Charles Moore," in the apartment where Moore was living. An automobile, located in Kansas City, Missouri, was identified as the vehicle used by Moore, Harris and Avery. The tires on that vehicle matched the plaster casts of the tracks found near the body. Moore was identified as having registered in at the College Inn Motel with Avery and Harris on November 27; Moore was identified as the person who purchased clothing for Avery at Fads And Fashions; Moore was identified as having been in Woolworth's restaurant area with another man and woman; and Moore was identified as having purchased luggage at Woolworth's, all on November 28.

## ACCOMPLICE TESTIMONY

Moore first contends that the trial court erred in refusing to give a requested instruction on accomplice testimony. The requested instruction, PIK Crim. 52.18 (since revised), is as follows:

"An accomplice witness is one who testifies that he was involved in the commission of the crime with which the defendant is charged. You should consider with caution the uncorroborated testimony of an accomplice witness."

The trial court denied the requested instruction, pointing out that the testimony of Avery was corroborated. The court gave the following instruction on the credibility of witnesses:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." PIK Crim. 52.09.

Defendant argues that the failure to give the requested instruction was prejudicial error because the testimony of Avery was uncorroborated and was the only direct evidence linking defendant to the crime. The question in this case is whether the testi-

mony was sufficiently corroborated to render the failure to give a cautionary instruction harmless error. We must therefore look at the areas of corroboration.

Avery said that the shooting occurred in a remote area, just across some railroad tracks, near a river, and that she heard four or five shots. Her description matched that of the area where the body was found. The pathologist confirmed the number of shots which found their mark. Avery said that the deceased said that he was on the way to attend his son's fifth birthday party; other witnesses testified that he was going home, to attend that function, when he disappeared. Avery testified as to the suitcase Moore purchased and kept, and she stated that Moore and Harris kept the camera which Norwood was carrying when seized. A similar suitcase, with Moore's name on it, was found in his apartment; the suitcase contained a camera similar to that which the deceased was carrying. Avery testified that Moore registered in at the motel, and that he registered Avery and Harris under certain names. The registration slip verified the names; and a handwriting expert testified that the writing was that of the defendant. Avery testified that Moore purchased luggage at Woolworth's on November 28; this was confirmed by store employees. Avery said that Moore bought clothes for her at Fads And Fashions; this was confirmed by an employee of that firm. Avery testified as to the location on the intercity viaduct in Kansas City where Moore threw Norwood's billfold away on the night of November 28; a search of the area beneath the bridge, along the banks of the Kansas River, conducted thirty days later, turned up a credit card with the name Samuel C. Norwood on it. Avery testified that she lost a glove before leaving Kansas City; that glove turned up in the front of the car used by Moore, Harris and Avery. Avery described the car, and said that it had been abandoned in Kansas City; it was located in that city; it bore the same license tag as the car the three had driven when staying at the Lawrence motel; and the tires were of the same make and model as the tires which left imprints at the scene where the body was found.

In the recent case of *State v. Moody,* 223 Kan. 699, 576 P.2d 637, *cert. denied* 439 U.S. 894 (1978), we said:

"The second area of this point relates to the refusal of the trial court to include a cautionary instruction on accomplice testimony in the instructions given to the

jury at the close of the evidence. This is the most serious issue on appeal. The trial court refused to give such an instruction on the grounds it was an improper comment by the court on the credibility of a witness. The requested instruction was PIK Crim. 52.18 . . . .

"In the trial of a criminal action, failure of the court to instruct the jury that the testimony of an accomplice should be considered with caution does not constitute reversible error when the testimony of the accomplice is fully corroborated and amounts to merely cumulative evidence and where the jury was instructed as to their duty to consider the weight of the evidence and credibility of witnesses. (*State v. Parrish*, 205 Kan. 178, Syl. 5, 468 P.2d 143.)

"The evidence in the case at hand was only partially corroborated. Clearly it was error not to have given the instruction. The question becomes whether or not the error is reversible error.

"It is significant that the court did not give PIK Crim. 52.09 on credibility of witnesses which is as follows:

" 'It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified.' Instead, the court gave the following instruction on credibility of witnesses.

" 'It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use that knowledge and experience which you possess in common with men in general, in regard to the matter about which a witness has testified. You may take into account his ability and opportunity to observe and know the things about which he or she has testified, his memory, manner and conduct while testifying, any interest he may have in the result of this trial, and the reasonableness of his testimony considered in the light of all the evidence in this case.

" 'If you find that any witness has wilfully testified falsely concerning any material matter, you have a right to distrust the testimony of that witness in other matters, and you may reject all or part of the testimony of that witness, or you may give it such weight as you think it deserves. You should not reject any testimony without cause.'

"We conclude that the credibility of witnesses instruction as given was sufficiently cautionary as to Meeks to prevent the error of failing to give the requested accomplice instruction from rising to the level of prejudicial or reversible error under the totality of the circumstances of this case." (pp. 702-703.)

The defendant maintains that this passage from *Moody* means that accomplice testimony must be fully and completely corroborated before failure to give the cautionary instruction is not error. Defendant contends that it was the expanded credibility instruction given in *Moody* which prevented prejudicial error there; and that since the trial court here gave only the PIK Crim. 52.09 instruction on credibility, the error here was prejudicial and reversal must follow. The State, on the other hand, argues that total corroboration is not a requirement established by *Moody*. It contends that 'fully' as used in *Moody* means 'substantial' cor-

roboration. Emphasizing the phrase "under the totality of the circumstances of this case," the State argues that Avery's testimony was sufficiently corroborated by independent evidence to remove any prejudice that may have resulted from the lack of a cautionary instruction.

Justice Kaul discussed accomplice testimony and the cautionary instruction at length in *State v. Wood,* 196 Kan. 599, 413 P.2d 90 (1966). His discussion is pertinent here and bears repeating:

"A review of the evidence reveals that in no instance was a fact essential to the conviction of defendant of the Weesner burglary and larceny supplied by the testimony of Johnita Means [the accomplice] standing alone. Her testimony merely corroborated the confession of defendant which was further corroborated by other witnesses and physical facts.

"The precise issue developed for our determination is whether or not the refusal of the trial court to submit the cautionary instruction amounted to reversible error when the testimony concerned was only cumulative.

". . . In *State v. Patterson,* 52 Kan. 335, 34 Pac. 784, it was held that unless the testimony of an accomplice was corroborated by other evidence as to some material fact the trial judge had a duty, if requested so to do, to advise the jury not to convict upon the testimony of an accomplice alone.

"In *State v. McDonald,* 107 Kan. 568, 193 Pac. 179; *State v. Bolton,* 111 Kan. 577, 207 Pac. 653 and *State v. Eyth,* 124 Kan. 405, 260 Pac. 976, instructions were approved which cautioned the jury in accepting and acting upon the *uncorroborated* testimony of an accomplice. In such cases the necessity of the cautionary instruction is obvious.

"In *State v. Miller,* 83 Kan. 410, 111 Pac. 437 and *State v. Stiff,* 148 Kan. 224, 80 P.2d 1089, it was held that failure to submit the cautionary instruction was not error when no request was made. *In the Miller case the court further stated that a jury of ordinary intelligence would naturally receive with caution the testimony of a confessed accomplice without such an instruction.* (Emphasis added.)

"The substance of defendant's argument appears to be that those cases, in which failure to submit the cautionary instruction was held not to be error when the instruction was not requested, are authority by inference for finding error on failure to submit the instruction when requested.

"When confronted with the identical problem on appellate review in *United States v. Becker,* 62 F.2d 1007, (2 Cir. 1933,) Circuit Judge Learned Hand, speaking for the court, stated,

" 'The warning is never an absolute necessity. It is usually desirable to give it; in close cases it may turn the scale; but it is at most merely a part of the general conduct of the trial, over which the judge's powers are discretionary, like his control over cross-examination, or his comments on the evidence. If he thinks it unnecessary—at least when, as here, the guilt is plain—he may properly refuse to give it.' (p. 1009.)

"The statement of Judge Hand has been cited as the rule in a number of later federal cases. See *Lyles v. United States,* 249 F.2d 744 (5 Cir. 1957), and cases cited therein. In *Stoneking v. United States,* 232 F.2d 385 (8 Cir. 1956), certiorari

denied, 352 U.S. 835, a cautionary instruction was requested and refused. In holding it was not reversible error the court stated:

" 'There is another, very cogent reason why failure to give defendant's second requested instruction was not error in this particular case. It is, of course, the better practice to give the instruction where the testimony of the accomplices lacks corroboration, but in the instant case we think there was substantial corroboration of the testimony of the two accomplices. . . . We find no error in connection with appellant's second point.' (p. 392.)

"[T]he testimony of the witness Means did nothing more than corroborate defendant's own confession and the other evidence of the state pointed out herein. Such being the case, even though we agree with the statement of Judge Hand that it is usually desirable to give the cautionary instruction we cannot say that refusal amounts to prejudicial trial error where the testimony concerned is only cumulative." (pp. 603-605.)

In *State v. Miller*, 83 Kan. 410, 111 Pac. 437 (1910), *rev'd on other grounds* 84 Kan. 667, 114 Pac. 855 (1911), we said: "Without [a cautionary] instruction, a jury of ordinary intelligence would naturally receive with caution the testimony of an accomplice." 83 Kan. at 412. And in *State v. Parrish*, 205 Kan. 178, 186, 468 P.2d 143 (1970), in discussing the trial court's failure to give a cautionary instruction as to accomplice testimony, we said: "The necessity for many of these tautological instructions is losing force when a case is being considered by our present enlightened jurors." We conclude that the warning is desirable but, as Judge Learned Hand said, it is "never an absolute necessity."

When an accomplice testifies, and whether that testimony is corroborated or not, the better practice is for the trial court to give a cautionary instruction. If the instruction is requested and is not given, the result may be error. Whether that error is prejudicial and reversible, however, must be determined upon the facts of the individual case. The first thing the appellate court must consider, in determining prejudice, is the extent and importance of the accomplice testimony, and the extent of the corroborating evidence. Here the testimony was lengthy, detailed, and important. It was, however, extensively documented and corroborated by the testimony of other witnesses, by circumstantial evidence, and by documentary evidence. Avery's testimony played an important part of the prosecution's case, and she was properly subjected to a lengthy and detailed cross-examination. Certainly no juror of average intelligence could have heard the latter without realizing that the witness's credibility was in issue.

The accomplice testimony in *Wood* was fully corroborated; the

accomplice testimony in *Moody* was but slightly corroborated. Each case differs. In the case before us, the accomplice testimony was not corroborated fully and completely in each and every detail, but there was a substantial amount of corroboration. On a scale of full and complete corroboration, substantial material corroboration, slight corroboration, or no corroboration, the record before us fits into the "substantial material corroboration" category. There were a number of inconsistencies between Avery's various statements, all of which were carefully pointed out on cross-examination; but she did not change fundamentally her version of what happened, and the corroborative evidence was substantial. Considering the entire record, we conclude that although the trial court erred in failing to give the requested cautionary instruction, that error was not prejudicial and does not require reversal.

## DISCOVERY

Defendant next contends that the trial court abused its discretion in denying the defendant discovery of three items: the criminal record of witness Terry Avery; the address of Terry Avery; and any statement or confession made by Lee Harris, a codefendant who pled guilty to a charge of first degree murder before this case came to trial. As to the prior criminal record of Terry Avery, the State contends in its brief that the trial court granted defendant's motion and that the State gave defense counsel a copy of that record prior to trial. Counsel on appeal was not trial counsel, and we therefore assume the State is correct in its assertion that the record was furnished. Miss Avery testified at trial as to a prior misdemeanor conviction in Colorado for shoplifting, and was subject to cross-examination at that time, and also upon preliminary examination. We find no error.

Defendant sought disclosure of Avery's address during the weeks prior to trial. Avery was in custody during part of the time between preliminary examination and trial, but in the latter part of that period she was released upon recognizance as a material witness. The trial court ordered that she be made available to defense counsel for interview prior to trial. Defendant was apparently aware of Avery's former home address in Denver. The trial court refused disclosure of her present whereabouts since she was a material witness against both defendant and Harris, and defendant had allegedly threatened her life. Under the circumstances the trial court did not abuse its discretion.

The trial court denied defendant access to any statement or confession made by codefendant Harris unless Harris was called as a witness, in which case the statement would be available under the provisions of K.S.A. 22-3213(1). Harris was not called by either party, and did not testify. The ruling appears to be in conformity with that section of the statute. If there was such a confession or statement, and if it was *favorable* to the defendant on the issue of guilt or punishment, the State was under a continuing duty to disclose it. *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963). There is no showing here, however, of the substance of Harris's statement or confession, or that the same was favorable to this defendant. We find no error.

CHANGE OF VENUE

Defendant next contends that it was error for the trial court to deny his motion for change of venue. The motion was based upon a showing of numerous articles in the local newspaper, and on one affidavit of a local businessman. We recently stated the law applicable to change of venue in *State v. Myrick & Nelms,* 228 Kan. 406, 616 P.2d 1066 (1980), as follows:

"A change of venue in a criminal case lies within the sound discretion of the trial court. [Citations omitted.] The burden of proof is cast upon defendant to show prejudice in the community which will prevent him from obtaining a fair and impartial trial. [Citations omitted.] Media publicity alone has never established prejudice per se. Defendant must show prejudice has reached the community to the degree it is impossible to get an impartial jury.

. . . .

"[P]rejudice must be established 'not as a matter of speculation but as a demonstrable reality.' " (p. 417.)

One of the important factors in considering a claim of error in regard to the denial of a change of venue is the difficulty or ease with which a jury is selected. Here we do not have the voir dire as part of the record on appeal, but it does appear from the record that the entire jury selection process consumed less than one day. On that date the jury was selected, the prosecution made its opening statement, and (in the absence of the jury) the trial court conducted a lengthy evidentiary hearing on a defense motion to suppress. Defendant makes no claim here of inordinate difficulty in selecting a jury. The mere fact that there have been many stories in the news media is not sufficient to establish that pervasive prejudice which must be shown in order to require a change

of venue. We conclude that defendant did not sustain his burden in this regard, and the trial court did not abuse its discretion in overruling the motion.

### THE CAMERA AS EVIDENCE

Defendant contends that the trial court erred in receiving into evidence a Polaroid SX-70 camera because it lacked probative value or relevance. The camera received in evidence was found in a suitcase bearing defendant's name, in the apartment occupied by defendant and Harris at the time of their arrest. Evidence established that a similar camera was in the possession of the deceased when he left the store on the night of his disappearance. Avery testified that defendant and Harris kept the camera the deceased was carrying. Moore was charged with the aggravated robbery of the deceased, and included in that charge was a description of the property taken—including one Polaroid SX-70 camera. Under the circumstances the camera received in evidence was clearly relevant as "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). The evidence was relevant and admissible; its weight was a question for the jury.

### DEFENDANT'S STATEMENT

Defendant contends that the trial court erred in refusing to suppress a statement he made while he was being returned by Douglas County officers from the Colorado state prison to Kansas for trial. The officers testified that they first gave Moore the *Miranda* warnings, and that he understood them. They then had some conversation with him, during which one of the officers expressed surprise that Moore had permitted Avery to come back to Colorado from California. Moore responded: "We are not professionals." According to the officers, the defendant thereafter said that he did not want to talk about the charges further until he had talked with his attorney, and all conversation on the subject ceased. Defendant, in his testimony on the motion to suppress, stated that the statement was made *after* he had declined to talk until he counseled with an attorney. The trial court held a full evidentiary hearing and denied the motion to suppress. Its order was supported by substantial competent evidence, and will not be overturned on appeal. *State v. Coop,* 223 Kan. 302, 309, 573 P.2d 1017 (1978).

### THE MURDER CHARGE AND THE INSTRUCTIONS

The Information, as to murder, charged that the defendant did

"willfully, feloniously and unlawfully, maliciously, deliberately and with premeditation and while in the perpetration of Kidnapping, a felony . . . and Aggravated Robbery, a felony . . . kill a human being, to-wit: Sam C. Norwood . . . ."

Defendant contends that this Information charged him only with felony murder, not both premeditated murder and felony murder, and he requested an elements instruction which would have required the jury to find that the offense was committed with malice, deliberation, premeditation, *and* while in the perpetration of the other felonies named. The trial court refused the requested instruction, and instead instructed the jury alternatively as to first degree premeditated murder and as to felony murder. A similar Information was before this court in *State v. Lamb,* 209 Kan. 453, 497 P.2d 275 (1972). We quoted the pertinent parts of the *Lamb* Information at page 471 of that opinion, and then said:

"The state by pleading Count III in the language set out clearly apprised the appellant that it was proceeding on both theories of first degree murder and that it intended to produce evidence on both theories.

". . . .

". . . Count III was not pleaded in the alternative, and the appellant was thereby advised the state did intend to proceed on both theories."

The Information charged both offenses; the evidence supported the instructions given; and the defendant was fully apprised that the State was proceeding on both theories. Under the circumstances the trial court did not err in instructing the jury in the alternative. See *State v. Jackson,* 223 Kan. 554, 557, 575 P.2d 536 (1978). We have considered the authorities relied upon by defendant, but find them unpersuasive. We find no error in the trial court's instructions.

### SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence was insufficient to support the guilty verdict. While there were some inconsistencies in various testimony, we must view the evidence in the light most favorable to the prosecution. It is not our duty to reweigh the evidence presented in the trial court. Upon appeal, when the sufficiency of the evidence to support the conviction is raised, the test is whether the evidence adduced at the trial, when viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979); *State v. Peoples,* 227 Kan. 127,

605 P.2d 135 (1980); *State v. Myrick & Nelms,* 228 Kan. 406. We have reviewed the evidence at considerable length, and conclude that a rational factfinder could readily have found the defendant guilty of the offenses charged.

We have reviewed other points raised, but find them to have no merit.

The conviction is affirmed.