NOT DESIGNATED FOR PUBLICATION

No. 112,736

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSE J. HADRIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed January 15, 2016. Affirmed.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., POWELL, J., and DAVID J. KING, District Judge, assigned.

*Per Curiam*:  Jesse J. Hadrin was convicted of aggravated robbery, aggravated burglary, criminal possession of a firearm, and two counts of aggravated intimidation. On appeal he asserts various trial errors which we will address in detail. With respect to the facts leading to Hadrin's convictions, the parties are well acquainted with them and we need not recount them here in detail. It suffices to say that the charges arose out of an armed home invasion for the purpose of robbing the occupant of prescription drugs.

Hadrin was arraigned at his preliminary hearing on February 18, 2014. Trial was set for May 12, 2014. In the week before trial, the district court discovered that an

1

insufficient number of prospective jurors would be available for Hadrin's trial and the court had another case scheduled for trial during the following week, so the court continued Hadrin's trial to May 27, 2014.

Trial commenced on May 27, 2014. On the third day of trial, Christina Stevenson, a victim/witness coordinator for the district attorney's office, alerted the district court of potential juror misconduct. The court convened a hearing outside the presence of the jury to investigate the matter. Hadrin, his attorney, and the prosecutor were present.

Stevenson testified that, earlier in the day, as jurors exited the courtroom for a lunch break, Hadrin's mother appeared to say "'[d]on't say a word'" to one of the jurors. In response, the juror denied any communication with Hadrin's mother. Angela Hadrin, Hadrin's mother, denied any communication with any juror, stating that as the jurors exited the courtroom, her mother said to her, "'Don't say nothing, Angela. Don't be talking. Keep your mouth shut.'" According to Angela, her mother "didn't want me talking, period . . . . She didn't want me talking to her, or to anyone, or anyone around." Angela apparently had been waiting in the hall during the trial proceedings. She acknowledged that when it appeared that her mother did not approve of the way she was dressed that day, Angela said to her mother, "'Don't say nothing about my clothes. . . . Don't say a word.'"

The district court then called for a recess. During the recess, the bailiff brought the juror to the district court's chambers where, outside the presence of the parties and the jury, the juror expressed being upset by Stevenson's allegations and felt his integrity had been challenged. The district court reassured the juror that it did not find that any impropriety had occurred. The district court also asked the juror whether he could remain fair and impartial despite the allegations, to which the juror responded that he could. After the recess, the court advised the parties of the conversation with the juror. When

2

asked for "thoughts, impressions or [to] make any motions," the parties said they had none, and the trial proceeded.

At the instruction conference Hadrin requested an instruction on robbery as a lesser-included offense of aggravated robbery. Hadrin asserted the evidence justified the instruction because "the jury could conclude that since a weapon was not recovered, that there was no weapon [used]." The district court denied Hadrin's request.

Hadrin was convicted on all counts and was sentenced to a controlling term of 134 months in prison. This appeal followed. We will consider Hadrin's issues on appeal in the order in which they are addressed in his appellate brief.

*Contact with Juror*

Hadrin contends the district court violated his constitutional and statutory rights to be present during all critical stages of his trial when the court communicated ex parte with a juror.

We usually do not entertain constitutional issues raised for the first time on appeal. *State v. Ortega-Cadelan*, 287 Kan. 157, 159, 194 P.3d 1195 (2008). But we will do so if:

> "(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason." 287 Kan. at 159.

In compliance with *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) and Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41), Hadrin specifically

invokes the first and second exceptions. In view of our Supreme Court's holding in *State v. Bowen*, 299 Kan. 339, 323 P.3d 853 (2014), we will consider this issue.

Whether the district court deprived Hadrin of this right to be present at all critical stages of his trial is a question of law over which our review is unlimited. See *State v. Killings*, 301 Kan. 214, 239, 340 P.3d 1186 (2015).

This right is grounded in the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *State v. Mann*, 274 Kan. 670, 680, 56 P.3d 212 (2002). K.S.A. 22-3405(1) sets forth a defendant's statutory right to be present. It states: "The defendant in a felony case shall be present . . . at every stage of the trial including the impaneling of the jury and the return of the verdict." K.S.A. 22-3405(1). Our Supreme Court has interpreted K.S.A. 22-3405(1) to mean:

> "'[A] felony defendant must be present at any stage of the trial when the jury is in the courtroom or when the defendant's presence is essential to a fair and just determination of a substantial issue. The statutory command of K.S.A. 22-3405(1) is analytically and functionally identical to the requirements under the Confrontation Clause and the Due Process Clause of the federal Constitution that a criminal defendant be present at any critical stage of the proceedings against him or her.' [Citation omitted.]" *Killings*, 301 Kan. at 241.

"'It is well settled that a conference between a trial judge and a juror is a critical stage of the trial at which a criminal defendant has a constitutional right to be present.'" 301 Kan. at 241 (quoting *Mann*, 274 Kan. at 682).

In *Mann*, the parties consented to an ex parte communication between the district court and two female jurors, after the jurors complained of feeling uncomfortable because of a menacing comment by a spectator. The two jurors conferred with two additional jurors about the comment. With the defendant's consent the district court discussed the

4

matter with the two female jurors without the defendant being present. But the court then met with the other two jurors and determined all four jurors could remain fair and impartial. On appeal, our Supreme Court concluded the exchange between the district court and the jurors was a critical stage of the trial. The district court's ex parte investigation of the matter beyond the first two jurors without the defendant being present was improper. *Mann*, 274 Kan. at 683.

Based on the holding in *Mann*, we conclude the district court erred in having a conversation with a juror outside Hadrin's presence. But there remains the issue of whether this was harmless.

For the denial of a constitutional right to be harmless, we must determine beyond a reasonable doubt that there is no reasonable possibility that the error contributed to the verdict. See *State v. Verser*, 299 Kan. 776, 789, 326 P.3d 1046 (2014); *Bowen*, 299 Kan. at 357. In making this determination we consider the factors enumerated in *State v. Rayton*, 268 Kan. 711, 717, 1 P.3d 854 (2000):

> "(1) the overall strength of the prosecution's case; (2) whether an objection was lodged; (3) whether the ex parte communication concerned some critical aspect of the trial or rather involved an innocuous and insignificant matter, [as well as] the manner in which [the communication] was conveyed to the jury; and (4) the ability of a post-trial remedy to mitigate the constitutional error. [Citation omitted.]"

First, the State presented direct and overwhelming evidence of Hadrin's guilt. Before the robbery, Jennifer Ditch and Hadrin discussed taking Margaret McBroom's pain medication. Having seen the pills in McBroom's car on a prior occasion, they checked her car before approaching the apartment. After the robbery, cell phone records showed Ditch and Hadrin exchanged several text messages about selling the pills obtained in the robbery. Ditch referred to Hadrin as "Jesse" during the course of the robbery, and Ashley Gray determined from examining photos of Ditch's friends on her

5

Facebook account that Hadrin was the man involved in the robbery. Ditch, McBroom, and Gray testified to Hadrin's involvement in the robbery. These facts all address Hadrin's participation in the robbery. Further, Hadrin does not challenge the sufficiency of the evidence to support his convictions.

Hadrin contends that Ditch, McBroom, and Gray were not credible because of their drug involvement. There does not appear to be an issue about Ditch's involvement in the drug trade. But at trial, Ditch asserted that McBroom and Gray were also either drug users or involved in drug dealing. McBroom and Gray denied any association with illegal drugs. McBroom testified that the drugs she had at home were prescription pain medications for the severe pain associated with her condition of endometriosis. At the time of the robbery she had been taking medications for her blood pressure and for anxiety and had been using an inhaler. The jury considered all of this testimony and found the State's testimony, particularly that of McBroom and Gray, to be credible. Hadrin would have us reweigh conflicting evidence and pass on the credibility of the witnesses in resolving this issue. Those, of course, were matters for the factfinders and not for us. See *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009).

Second, Hadrin did not object to the district court's ex parte communication with the juror after the court specifically provided him with the opportunity to do so.

Third, the court's contact with the juror was significant because it involved the court's determination that the juror could continue as a fair and impartial juror in the trial. This factor is in Hadrin's favor. Yet we have nothing other than ungrounded speculation from which we could reasonably conclude that the court's encounter with this juror affected the outcome of the trial.

Fourth, Hadrin could have immediately moved for a mistrial but he did not. He could have moved for new trial if he believed the situation truly affected the outcome of

6

trial, but he failed to do so. See K.S.A. 2013 Supp. 22-3501.

Considering these factors as a whole, we are satisfied that the State established beyond a reasonable doubt that there was no reasonable possibility that the district court's ex parte communication with a juror contributed to the verdict. The district court's error was harmless.

*Lesser-Included Robbery Instruction*

Hadrin contends the district court erred in failing to give a robbery instruction as a lesser-included offense of aggravated robbery. Hadrin maintains there was "some evidence" to suggest that he was unarmed during the robbery.

When the failure to give a lesser-included offense instruction is challenged on appeal, we first consider whether the issue was preserved for appeal. Here, it was. Hadrin appropriately objected and distinctly stated the grounds for his objection before the jury retired to deliberate as required by K.S.A. 2013 Supp. 22-3414(3).

Next, we determine whether the instruction was legally appropriate. Kansas law recognizes robbery as a lesser-included offense of aggravated robbery. See *State v. Simmons*, 282 Kan. 728, 742, 148 P.3d 525 (2006); *State v. Davis*, 256 Kan. 1, 23, 883 P.2d 735 (1994); *State v. Scott*, 28 Kan. App. 2d 418, 421, 17 P.3d 966, *rev. denied* 271 Kan. 1044 (2001). Thus, the lesser-included offense of robbery was legally appropriate in this case.

Next, we determine whether the instruction was factually appropriate, *i.e.*, whether there was sufficient evidence, viewed in the light favoring the defendant, to support giving a lesser-included instruction.

7

Finally, if the district court erred in not giving the lesser-included instruction, we must consider whether the error was harmless under the standard set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). See *State v. Armstrong*, 299 Kan. 405, 432-33, 324 P.3d 1052 (2014); *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012); *State v. Moyer*, 302 Kan. 892, 360 P.3d 384, 401-02 (2015).

Whether Hadrin's proposed lesser-included robbery instruction was appropriate turns on whether there was some evidence which would reasonably justify a conviction of the lesser-included crime of robbery. See K.S.A. 2013 Supp. 22-3414(3). In our review, we must examine all the evidence in the light favoring Hadrin to determine whether the jury could have found him guilty of robbery (without a gun) as opposed to the State's charge of aggravated robbery (with a gun). See K.S.A. 2013 Supp. 21-5420(a) and (b)(1).

Hadrin does not contest on appeal that he participated in the robbery. Three witnesses testified that Hadrin used a gun in the commission of the robbery. But Hadrin argues that the police never found the gun he was claimed to have used in the crime. He also claims that when ordered to give Hadrin their cell phones, McBroom and Gray were apparently unwilling to do so, somehow providing evidence that Hadrin was unarmed when the demand was made.

He also argues that immediately after the incident McBroom told Cody Henry, her common-law husband, "[t]hat bitch robbed me and she robbed me with a gun at my head." A review of the testimony discloses that McBroom told Henry she was referring to Ditch "and some guy." According to Henry, McBroom did not say that Ditch had the gun, but rather that "[t]hey had a gun." Nevertheless, from this Hadrin argues that a reasonable jury could have determined that it was Ditch who was armed, not he. Thus, the jury

8

should have been instructed on the lesser-included crime of robbery along with the State's charge of aggravated robbery.

In considering these arguments, we note that there was no testimony that Ditch had the gun rather than Hadrin. Three persons arrived at McBroom's apartment that night, but only Ditch and Hadrin entered. The other person remained at the car.

Gray testified that Hadrin pushed McBroom up against a cabinet, pulled out a gun, and demanded of McBroom, "'Where are the fucking pills?'" Hadrin pointed the gun at Gray, and at that point McBroom gave the pills to Hadrin. Hadrin also tried to hit her with the gun. Gray testified that after McBroom gave the drugs to Hadrin, he turned them over to Ditch, and as Ditch walked out the door with the drugs she told Hadrin, "'Get their phones so they can't call the cops.'" Hadrin unsuccessfully tried to grab McBroom's and Gray's cell phones and then left.

McBroom testified that Hadrin "shoved me into the kitchen counter, and I turned around, and that's when there's a gun in my face." She testified Hadrin was holding the gun.

Ditch testified that Hadrin pulled out a gun during the robbery. During her extensive cross-examination, which consists of over 50 pages of the trial transcript, Ditch was never confronted with the proposition that it was she, rather than Hadrin, who had the gun.

When viewing the evidence in the light favoring Hadrin, we are satisfied that no rational factfinder considering the totality of the evidence could have found Hadrin guilty of robbery as opposed to the charged crime of aggravated robbery.

9

Hadrin would have us find that in the trial of an aggravated robbery case, the court must instruct on simple robbery if no weapon was later found. We do not hold that this nonevidence compels a lesser-included instruction. Further, when viewing the evidence as a whole, including the conduct of the victims during the robbery, we do not find a negative inference that would support the notion that Hadrin was unarmed during the robbery. One can speculate about possible explanations for the conduct of the victims during the robbery, and many more of these alternatives support the proposition that Hadrin was armed rather than unarmed. Given the evidence the jury was presented with, we are satisfied that no rational juror would conclude from the conduct of McBroom and Gray that Hadrin was unarmed.

But even if the instruction would have been factually appropriate, the failure to give it in this case was harmless. Hadrin does not argue the district court's failure to give the lesser-included instruction violated a constitutional right. Thus, the standard is whether there was a reasonable probability that the error affected the outcome of the trial in light of the entire record. *Plummer*, 295 Kan. at 168 (citing *Ward*, 292 Kan. at 569). As we discussed above, there was no such reasonable probability in view of the overwhelming evidence of guilt. Thus, any possible error was harmless.

*Speedy Trial*

Hadrin argues the State violated his statutory right to a speedy trial by continuing trial beyond the speedy trial deadline. This issue presents a question of law, which we analyze de novo. See *State v. Thomas*, 291 Kan. 676, 692, 246 P.3d 678 (2011).

Hadrin was kept in jail awaiting his trial, so under K.S.A. 2013 Supp. 22-3402(a) he had to be brought to trial within 90 days following his arraignment. See *State v. Gill*, 48 Kan. App. 2d 102, 107-08, 283 P.3d 236 (2012), *rev. denied* 298 Kan. 1205 (2014). The 90-day speedy trial period may be extended under certain statutorily prescribed

conditions. K.S.A. 2013 Supp. 22-3402(e)(4) authorizes the district court to extend the 90-day time limit when, "[b]ecause of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial." Under this statute, the district court may order one continuance of 30 days or less. K.S.A. 2013 Supp. 22-3402(e)(4).

Hadrin was arraigned on February 18, 2014. The speedy trial clock began to run at that time. The 90-day speedy trial deadline was May 19, 2014. Hadrin's case was set for trial on Monday, May 12, 2014, within that deadline. Because prospective jurors were unavailable for the trial of the case on that date, the court continued the trial. The trial could not be rescheduled for the following Monday, May 19, 2014, and meet the statutory speedy trial deadline because of a conflict on the court's calendar: another case was set for trial on that day. So the court continued the trial to the next available date, which was the following week. The trial began on Tuesday, May 27, 2014.

Hadrin contends the real reason for the continuance was the unavailability of jurors on the original scheduled date for trial. The district court noted the conflict for the week following Hadrin's scheduled trial and explained, "[t]he concern about the jury summons is the primary motivating factor directing that this matter needed to be continued because of the Court's schedule difficulties."

When the court discovered that prospective jurors were unavailable for the original trial date, the court still had time to reschedule the trial and meet the speedy trial deadline. But, unfortunately, there was another case already scheduled on the only other available date within the 90-day deadline. Because of this scheduling conflict, the court set the case over for trial the following week. K.S.A. 2013 Supp. 22-3402(e)(4) permits the district court to do this without violating the defendant's statutory right to a speedy trial. Here, the district court did not violate Hadrin's statutory speedy trial rights in the rescheduling of the case for trial.

11

*Cautionary Instruction on the Testimony of an Accomplice*

Ditch, an accomplice, testified against Hadrin at trial. Hadrin included an accomplice instruction in the proposed jury instructions he submitted to the court. But at the later instruction conference, he did not request that the court give this instruction and did not object to its omission. Hadrin concedes in his appellate brief that this claimed error is being raised for the first time on appeal. Thus, we examine the court's failure to instruct on the accomplice Ditch for clear error.

In doing so, we first determine whether the jury instruction was legally and factually appropriate. This inquiry is a question of law subject to unlimited review of the entire record. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). Next, if the instruction was appropriate, we consider whether reversal is warranted applying the clearly erroneous standard. "To find clear error, we must be 'firmly convinced that the jury would have reached a different verdict if the instruction had been given.'" 302 Kan. at 753 (quoting *State v. Cameron*, 300 Kan. 384, 389, 329 P.3d 1158, *cert. denied* 135 S. Ct. 728 [2014]).

Whether an accomplice instruction was legally and factually appropriate depends on whether the witness was actually an accomplice. See *Simmons*, 282 Kan. at 735. An "accomplice" is a person who, "'"with the intent to promote or facilitate the commission of the crime, . . . solicits, requests, or commands [another] person to commit it, or aids the other person in planning or committing it."' [Citations omitted.]" *State v. Tapia*, 295 Kan. 978, 996-97, 287 P.3d 879 (2012); see PIK Crim. 4th 51.090 ("An accomplice witness is one who testifies that [she] was involved in the commission of the crime with which the defendant is charged."). It is the "better practice" for the district court to give a cautionary accomplice instruction when an accomplice testifies at trial. *State v. Moore*, 229 Kan. 73, 80, 622 P.2d 631 (1981); see PIK Crim. 4th 51.090, Comment.

12

Here, it is clear that Ditch was an accomplice. Ditch admitted that she was charged with aggravated robbery but because of a plea deal pled guilty to aggravated burglary for her involvement in these crimes. She testified that she and Hadrin entered McBroom's apartment and stole her prescription medication. Thus, an accomplice instruction was legally and factually appropriate.

We must next consider whether the failure to give an accomplice instruction was harmless error. In resolving this issue our appellate courts "have examined the extent and importance of an accomplice's testimony, as well as any corroborating testimony." *Tapia*, 295 Kan. at 997; *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995); *Moore*, 229 Kan. at 80-81.

The error is harmless if the accomplice witness' testimony "'is corroborated by other evidence and the witness' testimony does not provide the sole basis for a resulting conviction.'" *Tapia*, 295 Kan. at 997. Also, if the jury is cautioned about the weight to be accorded testimonial evidence in another instruction, the district court's failure to give a cautionary accomplice instruction is not reversible error. 295 Kan. at 997. Such is the case here.

Ditch was one of three witnesses who identified Hadrin as a participant in the crime. In her cross-examination Ditch was questioned at length about her plea deal with the State which preceded her testimony, thereby alerting the jury to a possible motive for Ditch to testify as she did. Finally, the jury was given the standard instruction that "[i]t is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

13

Under these circumstances, the district court's failure to give a cautionary accomplice instruction was harmless because giving it would not have made a difference in the jury's verdict.

Affirmed.