(109 P.3d 1282)
No. 91,985

STATE OF KANSAS, *Appellee,* v. MICHAEL J. DUHON, *Appellant.*

Opinion filed April 22, 2005.

*Sarah Ellen Johnson,* assistant appellate defender, for appellant.

*Jocilyn Oyler,* legal intern, *Bethany C. Fields* and *Robert C. Claus,* assistant district attorneys, *Christine E. Kenney,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before HILL, P.J., MARQUARDT and JOHNSON, JJ.

MARQUARDT, J.: Michael J. Duhon appeals his convictions for one count of attempted possession of a controlled substance and one count of delivery of a controlled substance. We affirm in part, reverse in part, and remand with directions.

Mary Kay Green met Duhon in the winter of 1996 and immediately began an intimate relationship with him. Duhon was residing in California, and in March 1997, Duhon began talking to Green about exchanging "large quantities of marijuana."

Green later approached Duhon about selling marijuana. During a series of telephone conversations, it was decided that Green would send money to Duhon and Duhon would mail her the ma-

rijuana. At some point after the fall of 1997, Green was robbed when she was attempting to sell 9 or 10 pounds of Duhon's marijuana. Green thought that she owed Duhon approximately $6,000 for the stolen marijuana. Green testified that Duhon shipped her 2 or 3 packages of marijuana during 1999. In April 2000, Green was arrested and charged with felony drug possession.

Green testified that she was hesitant to tell Duhon she would no longer be accepting shipments from him because she owed him money. Green tried to avoid Duhon's phone calls. She was successful until May 2000 when Duhon called to tell her that a package was on its way. Green further testified that Duhon had never sent a package without it being requested. Duhon told Green that he would be going to Omaha to sell drugs and he needed to ship them to her house. Green testified that she was angry but felt there was nothing that she could do.

Richard Britain, a postal inspector, was working in May 2000 when he was alerted to a suspicious package. Britain described it as a large box weighing approximately 40 pounds. The package had characteristics that law enforcement officials believe are indications of drug activity, namely: the package size; it was sent via Express Mail; the common names used on the mailing labels; the package was being delivered from a source state to a source city; and it had an incomplete return address. Britain checked an address database and found that the package did not indicate a specific apartment number. Britain testified that this was unusual, especially given the cost for mailing the package. Britain removed the package from the mail stream and gave it to law enforcement officers with a K-9 unit. The dog alerted, indicating the package contained drugs.

Authorities arranged for a controlled delivery of the package. Green answered the door and initially denied that she was expecting anything; however, Green signed for the package. Britain gave the signal to other law enforcement officials who came forward and received consent from Green to search the package. A KBI analysis confirmed that the package contained marijuana.

After visiting with the officers at the law enforcement station, Green consented to a search of her house. This search revealed a small amount of marijuana. While the officers were in her home,

Green telephoned Duhon. Duhon advised Green that he would be coming to Kansas the next day. Green showed pictures of Duhon to the officers. After providing this information, Green refused to further cooperate with law enforcement officers.

Detective Lyle Hagenbuch was assigned to conduct surveillance on Green's residence. He saw Duhon approach Green's apartment and knock on her door. No one answered so Duhon drove to a grocery store and was talking on a pay phone when he was approached by law enforcement officers. Duhon identified himself with a driver's license.

Duhon was later charged with one count of delivery of marijuana and one count of attempted possession of marijuana with the intent to sell. Duhon was convicted as charged by a jury and given the standard sentence of 30 months' imprisonment. Duhon timely appeals his conviction and sentence.

Green was initially charged with misdemeanor possession of marijuana and possession of drug paraphernalia and was granted a diversion.

### Accomplice Instruction

At trial, Duhon asked the trial court to instruct the jury on accomplice testimony because of Green's testimony. The trial court refused to give the instruction, finding that Green was not adequately involved in the crime to warrant the instruction.

On appeal, Duhon argues that Green's testimony clearly indicated she was involved with the drug transaction and the accomplice instruction was warranted. Duhon alleges that Green's statements were "self-serving," as she attempted to shift the blame for the crimes to Duhon. Duhon argues that there was no evidence presented which would have corroborated Green's testimony.

When reviewing challenges to jury instructions, an appellate court must consider the instructions as a whole and not isolate one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. *State v. Mays*, 277 Kan. 359, 378-79, 85 P.3d 1208 (2004).

A trial court must instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence. When considering the refusal of the trial court to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction. *State v. Lutter*, 27 Kan. App. 2d 858, 860, 10 P.3d 16, *rev. denied* 270 Kan. 902 (2000).

The instruction sought by Duhon was PIK Crim. 3d 52.18, which reads:

"An accomplice witness is one who testifies that (he) (she) was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice."

The Kansas Supreme Court stated in *State v. Abel*, 261 Kan. 331, 336, 932 P.2d 952 (1997), that an accomplice is one who testifies that he or she was involved in the commission of a crime. If that testimony is absent from the trial proceedings, there is no need to give the accomplice instruction.

Even though Green testified that she did not request the package of marijuana from Duhon, she knew what was in the package when she signed for it. Green could have refused the package. By accepting the package knowing its contents, Green became an accomplice.

Failing to give the accomplice instruction prejudiced Duhan. The trial court erred by not giving the accomplice instruction; therefore, we reverse and remand for a new trial.

### Comment on Prior Arrest

When referring to Duhon, Green testified, "There was also a time he came to visit and got arrested for drugs in Kansas City." The defense objected, and after the State requested the jury be admonished, the trial court instructed the jury to disregard Green's testimony about the arrest. Duhon then moved for a mistrial, arguing that Green's mention of the arrest lent credibility to her testimony. The request for a mistrial was denied.

On appeal, Duhon argues that the prejudicial information about his criminal record was particularly difficult for the jury to disregard. Duhon believes that his right to a fair trial was compromised

by the introduction of that testimony, and he asks this court to reverse the trial court's decision regarding the mistrial.

A decision on a motion for mistrial is within the trial court's discretion and will not be disturbed on appeal absent a clear showing of abuse of discretion. The defendant has the burden of showing substantial prejudice before an appellate court will find an abuse of discretion by the trial court. *State v. Manning*, 270 Kan. 674, 696, 19 P.3d 84 (2001).

In *State v. Rinck*, 256 Kan. 848, 853-54, 888 P.2d 845 (1995), the Kansas Supreme Court refused to reverse the denial of a motion for mistrial where the offending statement was unsolicited, a limiting instruction was offered but refused by the defendant, and no further mention of the defendant's prior record was made during the trial. The court concluded that under the totality of the circumstances at trial, the isolated statement could not have affected the jury's verdict.

We believe that similar circumstances are present in this case. Green's statement was clearly unsolicited by the State. An admonition to the jury to disregard evidence normally cures prejudice resulting from the improper submission of that evidence. *State v. Vontress*, 266 Kan. 248, 254, 970 P.2d 42 (1998). In the instant case, there was no additional mention of Duhon's prior arrests or convictions. Given these facts, we have no trouble concluding that the trial court made the correct decision by refusing to grant Duhon's motion for mistrial.

### Motion to Suppress

Prior to trial, Duhon filed a motion to suppress evidence, claiming that the postal authorities improperly seized his package without having reasonable suspicion the package contained drugs. Duhon claimed that the postal inspector's actions violated his constitutional right to be free of improper searches and seizures.

After hearing Britain's testimony and researching applicable law, the trial court concluded that Britain had reasonable suspicion the package contained illegal drugs. Duhon's motion to suppress was denied. Duhon lodged a contemporaneous objection at trial.

On appeal, Duhon argues that the factors relied upon by Britain are consistent with innocent activity. Duhon maintains that Britain's "arbitrary application" of the drug package profile cannot support the conclusion that there was reasonable suspicion to justify the removal of his package from the mail stream.

When reviewing a motion to suppress evidence, the appellate court determines whether the factual underpinnings of the trial court's decision are supported by substantial competent evidence. However, the ultimate legal conclusion drawn from those facts is a legal question requiring the appellate court to apply a de novo standard of review. The appellate court does not reweigh the evidence. *State v. Vandervort*, 276 Kan. 164, 169, 72 P.3d 925 (2003).

The Fourth Amendment to the United States Constitution recognizes that individuals have a right to be free from unreasonable searches and seizures of items they place in the mail. *United States v. Van Leeuwen*, 397 U.S. 249, 251-53, 25 L. Ed. 2d 282, 90 S. Ct. 1029 (1970); *United States v. Dennis*, 115 F.3d 524, 531 (7th Cir. 1997). However, if government officials possess reasonable suspicion to believe that a package contains contraband, they may detain that package for a reasonable length of time while investigating. 115 F.3d at 531-32. When determining whether reasonable suspicion exists, the court evaluates the circumstances as they are commonly understood within the law enforcement field. The constitutionality of a government agent's suspicion is intensely fact specific. *United States v. Terriques*, 319 F.3d 1051, 1056 (8th Cir. 2003).

The United States Postal Service maintains a narcotics package profile. Characteristics of this profile are: (1) the size and shape of the package; (2) whether the package is taped to close all openings; (3) handwritten or printed labels; (4) an unusual return name and address; (5) unusual odors coming from the package; (6) a fictitious return address; and (7) the package's destination. In addition, postal inspectors pay special attention to the package's city of origin and to the recipient's name. See *United States v. Cantrall*, 762 F. Supp. 875, 879 (D. Kan. 1991).

In *Cantrall,* the court noted that any one of these elements, standing alone, might be insufficient to provide reasonable suspi-

cion; however, when taken in combination, those factors were sufficient to justify an interruption of the mail stream. See 762 F. Supp. at 879-80 (citing *United States v. Hill*, 701 F. Supp. 1522, 1528, [D. Kan. 1988], *aff'd in part sub nom. United States v. Lux*, 905 F.2d 1379, 1382 [10th Cir. 1990]). In *Dennis*, the court upheld a seizure where the package was heavily taped, had been sent from one private person to another private person, and had been mailed from the Los Angeles area; the court also noted that Express Mail is often used by drug traffickers, due to its speed and reliability. 115 F.3d at 532. In *Terriques*, heavy taping and address irregularities alone were enough to warrant a seizure, given the experience of the interdiction officers. 319 F.3d at 1057-58.

Given the totality of the circumstances, we believe that Britain had reasonable suspicion to warrant removal of the package from the mail stream. We acknowledge that all of the elements, taken by themselves, are open to innocent interpretation. However, when combined, these clues provide reasonable suspicion for a brief detention to investigate the contents of the package. We do not find any error in the trial court's refusal to grant Duhon's motion to suppress.

### Interstate Agreement on Detainers Act

Duhon argues that his speedy trial time should have commenced on March 18, 2003; therefore, his trial was held outside the 180-day requirement mandated by K.S.A. 22-4401, Article III (a). Resolution of this matter requires us to interpret the meaning of a statute. Accordingly, we are entitled to exercise a plenary standard of review. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

When the State charged Duhon, he was incarcerated in California. Accordingly, when an individual is incarcerated in another state at the time that person is being charged with a crime in Kansas, the Kansas Agreement on Detainers Act (Act), K.S.A. 22-4401 *et seq.*, has to be initiated. K.S.A. 22-4401, Article III(a) requires that an inmate be brought to trial within 180 days after he or she has delivered to the Kansas prosecuting officer and the appropriate

court written notice of the place of his or her imprisonment and a request for a final disposition of the Kansas charges.

A detainer is a notice filed with the confining institution that criminal charges are outstanding in another jurisdiction and the prisoner is wanted in order to stand trial. Once a detainer is lodged, the authorities having custody of the prisoner must promptly inform the prisoner of the source and contents of the detainer and shall inform him or her of the right to request a final disposition. *State v. Robbins*, 272 Kan. 158, 164, 32 P.3d 171 (2001); see K.S.A. 22-4401, Article III(d).

On March 11, 2003, the Douglas County Sheriff's office transmitted a teletype to California, informing the California Department of Corrections (DOC) that Duhon had been charged in this matter. The California DOC received the notification that same day and informed Duhon that he could request disposition of the charges. On March 17, 2003, Duhon sent a "Demand for trial under interstate detainer agreement" to the warden of the California facility where he was incarcerated. A copy of this request was received by Douglas County on March 24, 2003.

On April 2, 2003, Duhon sent a letter to the Douglas County District Attorney seeking acknowledgment of his prior correspondence and asking, "What are the proceedings for a disposition in this case being that I'm incarcerated in California?" The Douglas County District Attorney's office informed Duhon that he needed to contact California prison officials and request that "proper documents" be prepared and delivered to Douglas County.

On April 11, 2003, Duhon again contacted the warden and asked if California had followed proper procedures. California prison officials acknowledged that Duhon had filed the necessary paperwork to initiate a proper request for disposition under the California Interstate Agreement on Detainers on April 22, 2003, and the records office was processing the request. The warden indicated that once the documents were ready, they would be sent to Duhon's counselor for Duhon's signature and then be forwarded to the proper authorities in Douglas County. The process was completed on May 2, 2003. The Douglas County District Attorney's office

acknowledged receipt of the proper documents on May 16, 2003. Duhon's trial commenced on October 14, 2003.

The California authorities clearly told Duhon that the only way he could request disposition of the charges was by acting in accordance with the California Interstate Agreement on Detainers. That compliance was not completed until May 2, 2003. Therefore, any communication Duhan had with Douglas County prior to May 2, 2003, did not start the running of the 180 days. Substantial compliance is sufficient under the Act. See *Ekis, Petitioner v. Darr*, 217 Kan. 817, Syl. ¶ 1, 539 P.2d 16 (1975). The trial court did not err when it found that Duhon was timely tried.

### *Criminal History*

Duhon was assigned a drug criminal history score of E. Duhon argues on appeal that prior convictions which increase the penalty for a crime beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. Duhon acknowledges the Kansas Supreme Court's holding in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). The Kansas Supreme Court has not departed from its position, and this court is duty bound to follow the *Ivory* holding. See *State v. Jackson*, 30 Kan. App. 2d 288, 299, 41 P.3d 871 (2002). Nonetheless, this issue is moot in light of our reversing and remanding the case for a new trial.

We affirm the trial court's denial of Duhon's motions to suppress and for a mistrial, as well as the trial court's finding that Duhon's trial was held within the 180-day period. We reverse Duhon's convictions of attempted possession of a controlled substance and delivery of a controlled substance and remand the case for a new trial with directions to include an accomplice instruction.

Affirmed in part, reversed in part, and remanded with directions consistent with this opinion.