No. 91,659

STATE OF KANSAS, *Appellee*, v. DONALD L. SIMMONS, *Appellant*.

148 P.3d 525

Opinion filed December 15, 2006.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

*Per Curiam*: This case is before us on review of the Court of Appeals' decision to reverse defendant Donald L. Simmons' convictions of aggravated kidnapping and aggravated robbery because the trial court refused to give an accomplice instruction. See *State v. Simmons*, No. 91,659, unpublished opinion filed March 3, 2006. Our consideration of the issue of whether reversible error occurred requires determination of whether one who is an accessory after the commission of a crime can be considered an accomplice and, more generally, whether under the facts of this case various witnesses were accomplices.

Our review leads to the conclusion that the trial court appropriately declined to give an accomplice instruction. Because we reverse the Court of Appeals panel on this issue and affirm the trial court, we must also consider two issues not reached by the Court of Appeals panel: whether lesser included offense instructions should have been given and whether the crimes of aggravated robbery and aggravated kidnapping are multiplicitous.

## FACTUAL AND PROCEDURAL BACKGROUNDS

The victim, Dick Baker, was a bricklayer who owned his own business and worked as a subcontractor. John Simmons (John), son of the defendant Donald L. Simmons (Simmons), and his friend, Dan Cornell, were employees of Baker and went to Baker's home to collect their pay for 2 days of work. Baker paid them directly from his wallet, which contained a large sum of cash. After collecting their pay, John and Cornell went to Simmons' mobile home where they began to discuss with Simmons and friends Aris Small and Jimmy Meza that Baker had a large amount of cash which might have been ill-gotten. John testified that this was just "table talk" and that they knew nobody would take it seriously. Similarly, Small, a female teenager who was a friend and roommate of Simmons and was present at his trailer, had the impression that the talk was not serious and that the conversation would go "no farther than the table."

At trial, Meza testified that Cornell and John asked if Meza wanted to "make some money real fast." He responded that he did not want anything to do with it. However, according to the trial testimony of John, Small, and Meza, Simmons stated that he would "do it." At that point, John had second thoughts and expressed that he did not want the robbery to take place. According to John's trial testimony, when he told Simmons that the robbery was a "stupid idea" and that he did not want any part of it, Simmons said it was "too bad." John testified he told his father not to hurt Baker. Then, John and Cornell left Simmon's residence, ostensibly because they did not want to be involved.

Witnesses testified that Simmons put on a hooded sweatshirt, women's sunglasses, a coat and gloves, and proceeded to leave the trailer on foot. Small saw Simmons carrying duct tape. Small and Meza also left; they, however, merely went to eat. Later in the evening, John called Simmons, who told John to come over because he had the money. Simmons told the others that he went over to Baker's trailer on the pretense of getting a job, but he ultimately beat Baker and taped his arms and legs to a table with duct tape. Simmons told the others that just before the attack, he said something like, "Let's party." Later, Simmons called John and Cornell to the back bedroom of the trailer where he gave them each $1,600. Then, he sent them into the living room to pay the others with $100 bills to keep them all from talking about what had happened.

The day after the attack, Michael Eades and Kenneth Williams, other employees of Baker, went to Baker's residence when he did not show up at a job site. Eades and Williams heard mumbling when they knocked on the door and a muffled cry for "help," so they got concerned and entered the trailer through the sliding glass door in the back. They found Baker on the floor, gagged and bound to a coffee table with duct tape. His legs were taped to the table, his arms were behind his back and taped to the table, and he had duct tape wound all the way up his head and over his face. Williams called the police.

Williams testified that the tape was "bound so solid" that he did not know how Baker could breathe. Eades and Williams helped Baker by cutting some of the tape to relieve pressure caused by

swelling and to allow him to breathe easier; they also gave him some fluids to drink. Although Baker initially went in and out of consciousness, he ultimately survived. As a result of the attack, Baker sustained nerve damage and kidney problems.

At trial, Baker confirmed that, around 9:30 or 10 p.m., his attacker knocked on Baker's door and inquired about a job. After the two talked for several minutes, Baker turned to go sit down on the couch as the other man was leaving and heard him say, "Let's party." Then, the attacker struck Baker's head, shoved his head into the sofa cushion, and duct-taped him to the table. Baker did not see much of his attacker's face and was unable to identify his attacker. According to Baker's testimony, he had "known of" Simmons for approximately 20 years, just well enough to merely say "hi" to him in passing. Although some aspects of Baker's physical description of the attacker were inconsistent with Simmons' characteristics, including age, height, weight, and the presence of "gold" and "silver" caps on his teeth, Baker described the attacker as a male wearing a hooded sweatshirt, a coat, women's sunglasses, and gloves. Baker also testified that $9,400 was missing from his trailer.

Simmons, John, and Cornell were originally charged regarding this matter. The charges against John were dismissed after the trial court determined at the preliminary hearing that there was insufficient evidence against him to bind him over for trial.

At Simmons' trial, the defense requested a cautionary accomplice testimony instruction with regard to John, but the trial court denied the request. Simmons was convicted of aggravated kidnapping and aggravated robbery.

## Court of Appeals' Decision

Simmons appealed his convictions, raising three issues: (1) whether the trial court erred in failing to give a cautionary accomplice jury instruction; (2) whether the trial court erred in failing to give lesser included jury instructions on kidnapping, criminal restraint, robbery, and theft; and (3) whether the crimes of aggravated kidnapping and aggravated robbery are multiplicitous under the facts of the case.

With regard to the accomplice jury instruction, at trial Simmons requested that such an instruction be given as it specifically related to John. The Court of Appeals, however, did not limit its analysis of the accomplice instruction's application to John's testimony. For the first time on appeal, Simmons asserted to the Court of Appeals that an accomplice instruction was warranted because three witnesses—John, Small, and Meza—were allegedly involved in the commission of the crime. (Cornell did not testify at trial.) Thus, the Court of Appeals examined whether those three witnesses were accomplices. The panel concluded that "any of these individuals may have been subject to criminal charges, and their testimony against Simmons should have been viewed as accomplice testimony." *Simmons,* slip op. at 7.

Noting that the trial court based its refusal to give a cautionary accomplice instruction on its prior determination that John was not bound over for trial based on the State's aiding and abetting theory, the Court of Appeals indicated that the trial court's reasoning "blur[red] the distinction between accomplice liability and other forms of criminal liability," and that the trial court erroneously preferred "consistency with prior rulings on criminal liability of one or more witnesses to an independent determination of whether there is a reasonable basis for accomplice liability of any witness at the trial." Slip op. at 8. The panel further observed that the trial court's discharge of John from criminal liability at the preliminary hearing was introduced at trial; thus, the panel concluded that the refusal to give the cautionary instruction, coupled with evidence of the discharge, may have misled the jury to believe that John's testimony did not need to be viewed with caution. The Court of Appeals concluded that this was "clearly prejudicial." Slip op. at 8.

Finding that the refusal to give the accomplice instruction was reversible error, the Court of Appeals reversed Simmons' convictions and remanded for a new trial. In light of that holding, the panel held Simmons' remaining claims of error were moot. Slip op. at 9.

*Did the Trial Court Err in Refusing to Instruct the Jury to Consider With Caution the Testimony of an Accomplice?*

On our review of the Court of Appeals' decision, the State argues that, in reversing the defendant's convictions, the Court of Appeals

erroneously disregarded this court's well-established directives regarding the application of PIK Crim. 3d 52.18 (testimony of an accomplice), where we have specified that a cautionary accomplice instruction is necessary only where a witness testifies that he or she was involved in the commission of the crime with which the defendant has been charged. Specifically, the State asserts that neither John, Meza, nor Small fit the PIK Crim. 3d 52.18 definition of an accomplice.

### Standard of Review

A review of the transcript from the jury instructions conference shows that Simmons' request for an accomplice witness instruction related solely to the testimony of John. When an accomplice testifies and a cautionary instruction is requested but not given, the result may be error. *State v. Moore*, 229 Kan. 73, 80, 622 P.2d 631 (1981). With regard to the jury instruction as it related to John's testimony, the following standard of review applies:

"When the trial court refuses to give a requested instruction, an appellate court must view the evidence in a light most favorable to the party requesting the instruction. . . . [A]n appellate court cannot consider the requested instruction in isolation. Rather, the court must consider all of the instructions together as a whole. If the instructions as a whole properly and fairly state the law as applied to the facts of the case, and the jury could not reasonably be misled by them, the instructions are not reversible error even if they are in some way erroneous. [Citation omitted.]" *State v. Jackson*, 280 Kan. 541, 549-50, 124 P.3d 460 (2005); see *State v. Mays*, 277 Kan. 359, 378-79, 85 P.3d 1208 (2004).

It is important to note, however, that the Court of Appeals also considered the trial court's refusal to give a cautionary accomplice jury instruction in relation to the corroborating testimony of Small and Meza. The State suggests that a clearly erroneous standard should apply in reviewing the issue and, with respect to these two witnesses, that appears to be correct. While the record on appeal shows that Simmons proposed a general cautionary accomplice jury instruction, the transcript of the jury instructions conference shows that he requested the instruction merely as it related to John's testimony.

Because Simmons' request for the accomplice witness instruction did not give the trial court the opportunity to consider the

application of the instruction as it applied to Small and Meza, it is appropriate to apply the clearly erroneous standard of review. See K.S.A. 2005 Supp. 22-3414(3). The determination of whether the accomplice instruction should be given depends on whether the witness is an accomplice. Therefore, the analysis differs as to each witness and is based upon his or her involvement in the events. Thus, the trial court could have concluded the accomplice witness instruction was not warranted based upon John's involvement, but it could have determined the instruction may have been appropriate based upon Small's or Meza's. We, therefore, conclude that the analysis as to these witnesses requires application of the clearly erroneous standard. Under that standard, where an instruction was not requested, the failure to give an instruction is clearly erroneous only if the appellate court reaches a firm conviction that, had the instruction been given, there was a real possibility the jury would have returned a different verdict. See *State v. Boone*, 277 Kan. 208, 220, 83 P.3d 195 (2004).

If there is error, we must then examine whether the error was prejudicial. In determining whether prejudicial error has occurred in the failure to give an accomplice witness instruction, courts generally examine the extent and importance of the accomplice testimony, as well as any corroborating testimony. *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995); see *Moore*, 229 Kan. at 80-81.

### Pertinent Jury Instructions

The accomplice instruction requested by Simmons was based on PIK Crim. 3d 52.18, which states:

"An accomplice witness is one who testifies that (he)(she) was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice."

The PIK Crim. 3d 52.18 Notes on Use indicate that it is proper to give this cautionary instruction whether or not there is corroborating evidence, as long as the accomplice is not also a codefendant in the trial. In the present case, the trial court did not give the accomplice witness instruction, but the court gave the general

credibility of witnesses instruction to the jury, PIK Crim. 3d 52.09, which states:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

## Accomplice Liability

As a threshold matter, it must be determined whether John, Meza, or Small were accomplices to Simmons. The State argues that a cautionary accomplice witness instruction was not required at trial because neither John, Meza, nor Small testified that they were involved in the "commission" of the crimes with which Simmons was charged. According to the Court of Appeals, the State's proposed application of the instruction is too narrow. We disagree.

More specifically, the Court of Appeals stated:

"Based upon testimony at the preliminary hearing, clearly John and Cornell could have been charged with conspiracy. . . . Others present in Simmons' trailer for the discussion of an attack on Baker certainly did not protest or report the plan and quite willingly accepted a share of the fruits of the crime, arguably triggering accomplice liability as well." *Simmons*, slip op. at 7.

In considering these conclusions it is helpful to first discuss the distinction between liability for crimes of another, K.S.A. 21-3205, and the crime of conspiracy, K.S.A. 21-3302. Under K.S.A. 21-3205 an individual is criminally responsible for a crime committed by another if that individual intentionally aids, abets, advises, hires, counsels, or procures the other to commit the crime. In addition, the individual is also statutorily liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him or her as a probable consequence of committing or attempting to commit the crime intended.

The crime of conspiracy, K.S.A. 21-3302, is an agreement with another person to commit a crime or to assist in committing a crime. In addition, the legislature provided that no person may be convicted of the crime of conspiracy unless an overt act in furtherance of the conspiracy is alleged and proved to have been committed by the individual or by a coconspirator. The legislature provided a defense to the crime of conspiracy if the accused voluntarily

and in good faith withdraws from the conspiracy and communicates the fact of such withdrawal to one or more of the coconspirators before any overt act in furtherance of the conspiracy has been committed by the accused or by a coconspirator. K.S.A. 21-3302(b).

As we have noted, the Court of Appeals believed there was a possibility of conspiracy liability. The panel stated: "Based upon testimony at the preliminary hearing, clearly John and Cornell could have been charged with conspiracy." Slip op. at 7. There are several reasons we reject this conclusion. First, this analysis is skewed because the appropriateness of a jury instruction is not based upon testimony made at a preliminary hearing; rather, consideration of whether an instruction should be given is based upon evidence presented at trial. Second, it was acknowledged by the trial court that the charges against John, alleging criminal liability, were dismissed at the close of John's probable cause hearing. Thus, a lack of evidence had previously been recognized with respect to John's alleged role in the crime.

Most importantly, even when the evidence at trial is viewed in a light most favorable to Simmons, there is no evidence that Small, Meza, or John had even a tacit agreement with Simmons relating to the charged crimes of aggravated robbery and aggravated kidnapping. In fact, with regard to Small, there was no evidence she did any more than listen to the discussion; there was no evidence that she participated in the planning or the actual attack. At best, there was evidence of discussions involving John, Cornell, and Simmons, which might have constituted planning. However, John's testimony, which was corroborated by other witnesses and never contradicted at trial, was that John was vehemently opposed to his father's decision to commit the crime. Thus, there was no evidence of any agreement, a necessary predicate to finding a conspiracy. As we have previously stated, without evidence of an agreement between a witness and the perpetrator of the crime, the witness cannot be an accomplice under a conspiracy theory because there was no evidence of a conspiracy. *State v. Humphrey*, 267 Kan. 45, 63, 978 P.2d 264 (1999).

Next, the Court of Appeals stated that John and other witnesses "did not protest or report the plan and quite willingly accepted a share of the fruits of the crime, arguably triggering accomplice liability as well." *Simmons*, Slip op. at 7. Discussion of this conclusion requires some examination of the definition of accomplice liability.

PIK Crim. 3d 52.18 defines "accomplice witness" as one who testifies that he or she was "involved in the commission" of the defendant's charged crime. See *State v. Able*, 261 Kan. 331, 336, 932 P.2d 952 (1997), *disapproved on other grounds State v. Mathenia*, 262 Kan. 890, Syl. ¶ 3, 942 P.2d 624 (1997). This is consistent with the general view which is that "[a] person is an 'accomplice' of another in committing a crime if, with the intent to promote or facilitate the commission of the crime, he solicits, requests, or commands the other person to commit it, or aids the other person in planning or committing it." 1 Torcia, Wharton's Criminal Law § 38, p. 220 (15th ed. 1993). Thus, the term refers to a wide range of persons who, at common law, were said to have primary or secondary liability—principals who are codefendants, accessories, conspirators, or aiders and abettors. However, although the term is often used inadvertently and without precision as a synonym for one of these categories of criminal actors, technically the term "accomplice witness" applies only when one who has been involved in the commission of a crime is called to testify against another during the course of a trial. See 21 Am. Jur. 2d, Criminal Law § 205.

Kansas case law is consistent with this general view. Many of the relevant cases are fully discussed in *State v. Davis*, 282 Kan. 666, 679-83, 148 P.3d 510 (2006), *modified* 283 Kan. 569, 576-80, 158 P.3d 317 (2007). That discussion need not be repeated here; suffice it to say that the cases make it clear that to be an accomplice witness, the person must testify and be involved in the commission of the crime. See *State v. Gholston*, 272 Kan. 601, 616-18, 35 P.3d 868 (2001), *cert. denied* 536 U.S. 963 (2002); *Humphrey*, 267 Kan. at 62-63; *Abel*, 261 Kan. at 336; *State v. Noriega*, 261 Kan. 440, 447, 932 P.2d 940 (1997), *disapproved on other grounds Mathenia*, 262 Kan. 890, Syl. ¶ 3.

The Court of Appeals cited no authority for its conclusion that accomplice liability might arise because of the failure to stop or report a crime. As noted, by definition, an accomplice must participate in the crime. Certainly, that participation may be as an aider and abettor, but failing to stop or report a crime is not the basis for liability under an aider and abettor theory.

"To be convicted as an aider and abettor, 'the law requires that the person knowingly associates with the unlawful venture and participates in a way which indicates that such person is furthering the success of the venture.' *State v. Hobson*, 234 Kan. 133, 138, 671 P.2d 1365 (1983). Mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime is itself insufficient to establish guilt as an aider and abettor; however, when a person knowingly associates with the unlawful venture and participates in a way which indicates he or she willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury. [Citation omitted.]" *State v. Kaiser*, 260 Kan. 235, 242, 918 P.2d 629 (1996), *disapproved on other grounds State v. Gonzalez*, 282 Kan. 73, 145 P.3d 18 (2006).

Similar conclusions apply to the determination of whether someone is an accomplice. We have repeatedly held that mere presence during the planning or commission of a crime does not make one an accomplice. *E.g., Humphrey*, 267 Kan. at 62-63. Moreover, as we stated in *Davis*, "This court has specifically rejected the idea that mere 'involvement in events' makes a witness an accomplice within the meaning of PIK Crim. 3d 52.18. See *Gholston*, 272 Kan. at 618. Instead, the witness must have been *involved in the commission of the crime with which the defendant is charged." Davis*, 283 Kan. at 580. It follows from this reasoning that the mere failure to stop a crime or to report a crime does not make one an accomplice.

The final basis mentioned by the Court of Appeals for finding the witnesses to be accomplices was their receipt of money after the crime had been committed. While courts in other jurisdictions have determined that where there has been a prearranged plan or conspiracy, accepting fruits of the crime creates accomplice liability for purposes of corroboration, there is nothing in Kansas case law to suggest that one can be held liable as an accomplice solely for receiving stolen cash, especially where there is no evidence of a prearranged plan. See Annot., *Receiver of Stolen Goods as Accom-*

*plice* § 4, 74 A.L.R. 3d 560; *People v. Lima*, 25 Cal. 2d 573, 577, 154 P.2d 698 (1944) (although thief and receiver of stolen goods generally are not accomplices, exception exists where they conspire together in prearranged plan for one to steal and deliver property to other and, pursuant to such plan, one does steal and deliver to other); see also *Grady v. Commonwealth*, 237 Ky. 156, 158, 35 S.W.2d 12 (1931) (ordinarily one who steals goods is not accomplice of individual who knowingly receives them).

A case that comes close to such a receiving-stolen-goods scenario is *State v. Duhon*, 33 Kan. App. 2d 859, 863, 109 P.3d 1282 (2005), where the defendant became involved in a drug buying and selling scheme with Mary Kay Green in 1997. Green would send money to Duhon in California, and Duhon would mail Green quantities of marijuana. At some point in 1997, Green was robbed when she was attempting to sell 9 or 10 pounds of Duhon's marijuana, and she thought she owed Duhon approximately $6,000 for the stolen drugs. Green testified that Duhon shipped her two or three packages of marijuana during 1999. Then in April 2000, Green was arrested and charged with felony drug possession.

According to Green, she was hesitant to tell Duhon she would no longer accept shipments from him because she owed him money. She tried to avoid his phone calls, but in May 2000, Duhon called to tell her that a package was on its way. Green also testified that Duhon had never sent a package without it being requested. Duhon told Green he would be going to Omaha to sell drugs and needed to ship them to her house. When authorities were alerted regarding the suspicious package, they arranged for a controlled delivery. Green initially denied that she was expecting anything, but then signed for the package. A KBI analysis confirmed that the package contained marijuana.

At Duhon's trial, where he was charged with delivery of marijuana and attempted possession of marijuana with the intent to sell, the trial court refused to give a cautionary accomplice witness instruction. The court found that Green was not adequately involved in the crime to warrant the instruction. The Court of Appeals held the failure to give such an instruction was reversible error and determined that "[e]ven though Green testified that she did not

request the package of marijuana from Duhon, she knew what was in the package when she signed for it. Green could have refused the package. By accepting the package knowing its contents, Green became an accomplice." 33 Kan. App. 2d at 863.

The present case is distinguishable from *Duhon*, where a relationship existed in which the witness accepted packages of drugs from the defendant and, thus, Green participated in the crime.

Moreover, in *Davis*, 283 Kan. at 579-80, we rejected the defendant's argument that *State v. Rakestraw*, 255 Kan. 35, 871 P.2d 1274 (1994), holds that a mere accessory after the fact is enough to warrant an accomplice witness instruction. Rather, as we previously noted, in *Davis*, 283 Kan. at 576-80, we emphasized that to be an accomplice, one must participate in the crime.

We therefore conclude the Court of Appeals' analysis was in error and disagree that the failure to give the accomplice witness instruction required reversal of Simmons' convictions. This court has determined that no reversible error occurs due to a trial court's failure to give a cautionary accomplice witness instruction if a witness' testimony is corroborated by other evidence and the witness' testimony does not provide the sole basis for a resulting conviction. See *State v. Beuhler-May*, 279 Kan. 371, 384-85, 110 P.3d 425, *cert. denied* 546 U.S. 980 (2005); *State v. Reed*, 256 Kan. 547, 558-59, 886 P.2d 854 (1994). Portions of John's testimony were clearly corroborated by other witnesses' testimony, and John's testimony did not provide the sole basis for Simmons' convictions.

Further, a failure to provide the jury with the cautionary accomplice witness instruction of PIK Crim. 3d 52.18 is not error when the defendant's guilt is plain or when the jury is cautioned about the weight to be accorded testimonial evidence in other instructions. *State v. Crume*, 271 Kan. 87, 94-95, 22 P.3d 1057 (2001). In *Crume*, this court found no error when the jury was instructed: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness testified." 271 Kan. at 95; see *State v. Moody*, 223 Kan. 699, 702-03, 576 P.2d 637, *cert. denied* 439 U.S. 894 (1978); *State v. Percival*,

32 Kan. App. 2d 82, 92-93, 79 P.3d 211 (2003), *rev. denied* 277 Kan. 927 (2004). The same cautionary credibility of witnesses instruction was provided in this case.

While it is true that John's, Meza's, and Small's testimony played an important role in the State's case, they were all properly subjected to thorough and detailed cross-examination. One could easily conclude that no juror of average intelligence could have heard their testimony and accompanied cross-examination without realizing that their credibility was at issue. See *State v. Moore*, 229 Kan. 73, 79-81, 622 P.2d 631 (1981). Because these three witnesses were not accomplices and because their testimony was substantially corroborated, the trial court's refusal to give a cautionary accomplice witness instruction was not reversible error under either standard of review.

*Did the Trial Court Err in Failing to Instruct the Jury on Kidnapping, Criminal Restraint, Robbery, and Theft as Lesser Included Offenses?*

Simmons argued to the Court of Appeals that the trial court erred in failing to instruct the jury on kidnapping, criminal restraint, robbery, and theft as lesser included offenses. In light of the Court of Appeals' reversal based on the trial court's refusal to give a cautionary accomplice witness instruction, the panel did not address this issue involving lesser included offense instructions.

### Standard of Review

Simmons did not request lesser included offense instructions at trial. Where an instruction was not requested, the failure to give an instruction is clearly erroneous only if the appellate court reaches a firm conviction that, had the instruction been given, there was a real possibility the jury would have returned a different verdict. *Boone*, 277 Kan. at 220.

Except in a felony-murder case, a criminal defendant has a right to an instruction on all lesser included offenses supported by the evidence as long as (1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with that theory and (2) the evidence at trial does not exclude a theory of guilt on the lesser offense. *State v. Williams*, 268

Kan. 1, 15, 988 P.2d 722 (1999). An instruction on a lesser included offense is not proper if from the evidence the jury could not reasonably convict the accused of the lesser offense. *State v. Robinson,* 261 Kan. 865, 883, 934 P.2d 38 (1997).

The principal crimes in this case were aggravated kidnapping and aggravated robbery. As Simmons correctly notes, kidnapping and criminal restraint are lesser included offenses of aggravated kidnapping. See *State v. Hammond,* 251 Kan. 501, 507, 837 P.2d 816 (1992); *State v. Bourassa,* 28 Kan. App. 2d 161, 173, 15 P.3d 835 (1999), *rev. denied* 269 Kan. 934 (2000). Moreover, robbery and certain types of theft have been deemed to be lesser included offenses of aggravated robbery. See *State v. Sandifer,* 270 Kan. 591, 601, 17 P.3d 921 (2001); *State v. Davis,* 256 Kan. 1, 23, 883 P.2d 735 (1994). Simmons argues that the trial court should have instructed on these lesser included crimes because, based on the evidence, the jury could have convicted him of the lesser crimes.

To prove that Simmons committed aggravated robbery, the State had the burden to show that he took "property from the person or presence of another by force or by threat of bodily harm to any person" and that Simmons was "armed with a dangerous weapon or [inflicted] bodily harm upon any person in the course of such robbery." See K.S.A. 21-3426; K.S.A. 21-3427. To prove that Simmons committed aggravated kidnapping, the State's burden was to show that he confined Baker, accomplished by force or threat, with the intent to hold him to facilitate the commission of any crime— *e.g.,* aggravated robbery—and that Simmons inflicted bodily harm upon Baker. See K.S.A. 21-3420; K.S.A. 21-3421.

For both crimes, there was overwhelming evidence of bodily harm suffered by Baker. His hands and feet were duct-taped to a table, his head and face were covered in duct tape, he was left this way for over 12 hours, and Baker suffered long-term nerve damage and kidney problems.

On appeal, Simmons does not dispute that Baker suffered bodily harm. He merely argues that there was evidence to support the lesser included offenses. Simmons' defense theory, however, was that he did not commit the crimes. Therefore, given the evidence, the jury had the opportunity either to believe Simmons and acquit

or to believe the incriminating evidence and find Simmons guilty of the aggravated crimes. The evidence at trial clearly excluded the lesser included offenses. Lesser included offense instructions were not warranted because the jury could not have reasonably convicted Simmons of the lesser offenses.

Under the circumstances, the trial court's failure to give lesser included instructions for kidnapping, criminal restraint, robbery, and theft was not clearly erroneous.

*Are the Defendant's Convictions of Aggravated Kidnapping and Aggravated Robbery Multiplicitous?*

The final issue raised on appeal, but not addressed by the Court of Appeals, is Simmons' contention that his aggravated kidnapping and aggravated robbery convictions are multiplicitous. This contention lacks merit.

*Standard of Review*

Simmons did not raise the multiplicity issue below, but Kansas appellate courts may consider multiplicity for the first time on appeal to serve the ends of justice or prevent a denial of fundamental rights. *State v. Dubish*, 234 Kan. 708, 718, 675 P.2d 877 (1984); *State v. Hankerson*, 34 Kan. App. 2d 629, 632, 122 P.3d 408 (2005), *rev. denied* 281 Kan. 1380 (2006); *State v. Taylor*, 25 Kan. App. 2d 407, 409-10, 965 P.2d 834, *rev. denied* 266 Kan. 1115 (1998). "The fundamental right of a defendant to a fair trial under the 5th and 14th Amendments to the Constitution of the United States would be violated by a multiplicitous conviction." *Dubish*, 234 Kan. at 718.

The issue of whether Simmons' convictions are multiplicitous is a question of law subject to unlimited review. *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006).

Simmons argues that the State's theory of the aggravated kidnapping was that Simmons took and confined Baker by force or threat with the intent to hold Baker to facilitate the aggravated robbery. Simmons contends that the only force inflicted on Baker, striking Baker on the head and taping him to the table, involved a single act of violence. Therefore, according to Simmons, that single act of violence could not be used to support both crimes.

*Application of Schoonover*

In making this single act of violence argument, Simmons relies on *State v. Groves*, 278 Kan. 302, 95 P.3d 95 (2004), which recognized the single act of violence paradigm. However, in *Schoonover*, 281 Kan. at 492-95, this court recently rejected this multiplicity paradigm as a corruption of early multiplicity jurisprudence and overruled *Groves*.

In *Schoonover*, this court developed a test to apply to multiplicity issues. First, a court must consider whether the convictions are based upon the same conduct. If not, the multiplicity analysis ends. 281 Kan. at 496. The *Schoonover* court listed four nonexclusive factors to consider in determining whether convictions arise out of the same conduct:

"(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. 453, Syl. ¶ 16.

If the convictions are based on the same conduct, the court must consider whether the charges in the complaint or information under different statutes requires proof of an element not necessary to prove the other offense (the same elements test); if so, the charges stemming from a single act are not multiplicitous. 281 Kan. at 495-98.

In the present case, the aggravated robbery conviction and the aggravated kidnapping conviction clearly arose out of the same conduct. The offenses were committed at the same time and at the same place, *i.e.*, in Baker's trailer. There was no evidence of intervening events between the two offenses, and there was no evidence of a fresh criminal impulse occurring between the aggravated kidnapping and the aggravated robbery.

This leads the analysis into the second step—considering whether the two crimes are the same offense by statutory definition. Simmons' convictions were based upon different statutes. A same-elements test reveals that each offense required proof of an element not necessary to prove the other offense. Aggravated kidnapping, under the statutory subsection charged in this case, re-

quires proof of movement or confinement of the victim with intent to hold such person in order to facilitate the commission of an aggravated robbery and bodily harm results. See K.S.A. 21-3420(b); K.S.A. 21-3421. Among other elements, aggravated robbery requires the unlawful taking of property from the person or presence of another by force or threat of bodily harm. K.S.A. 21-3426; K.S.A. 21-3427. The movement or confinement element of aggravated kidnapping is not required to prove aggravated robbery, and the unlawful taking of property element of aggravated robbery is not required to prove aggravated kidnapping.

Under the test outlined in *Schoonover*, Simmons' convictions are not multiplicitous.

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

LUCKERT, J., not participating.

LOCKETT, J., Retired, assigned.