NOT DESIGNATED FOR PUBLICATION

No. 113,342

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES BUCKNER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; CLINT B. PETERSON, judge. Opinion filed June 3, 2016. Affirmed in part, vacated in part, and remanded with instructions.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Russell W. Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and BURGESS, S.J.

*Per Curiam*: A jury found James Buckner guilty of aggravated kidnapping, aggravated battery, three counts of domestic battery, kidnapping, and criminal restraint in three consolidated cases. Buckner now appeals, asserting the district court erred by: (1) denying his request for lesser included instructions on the aggravated kidnapping and kidnapping charges; (2) denying the jury's right to nullify his convictions; (3) improperly instructing the jury on the State's burden of proof; and (4) improperly sentencing him using an incorrect criminal history score. We agree with Buckner that the district court wrongly scored crimes from each of the consolidated cases to increase his criminal

1

history score as to the other consolidated cases, and we therefore vacate his sentences and remand to the district court for recalculation of his criminal history score and resentencing. However, we reject Buckner's other contentions of error and affirm his convictions.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts encompass three separate incidents resulting in three cases that were later consolidated before the district court pursuant to K.S.A. 22-3203.

A.    *First incident—13 CR 61*

On January 7, 2012, Lacey Kisner and Buckner were arguing in the home they shared, which then, according to Kisner, became physical. Kisner tried to leave the house, but Buckner prevented her from doing so by keeping her cellular phone and car keys away from her. At one point, Kisner sat in a chair in the living room and Buckner blocked her from leaving the house by lying on top of her.

Kisner's statements to law enforcement officers and before the trial court are inconsistent as to what happened next. When Kisner first reported the crime a week after the incident, she told the officer that Buckner had used his hand to touch her vagina. A year and a half later, Kisner reported to a different officer that Buckner tried to put his penis inside of her vagina. At the preliminary hearing and at trial, Kisner testified that Buckner penetrated her vagina with a portion of his penis while Kisner told him no; Buckner stopped after Kisner convinced him that what he was doing was wrong. After the alleged rape, Kisner testified, Buckner struck her in the eye.

2

Based on this incident, the State charged Buckner in 13 CR 61 with (1) rape, (2) criminal threat, (3) intimidation of a witness or victim, (4) domestic battery, and (5) criminal restraint.

B.    *Second incident—12 CR 443*

Kisner and Buckner were still residing together on November 7, 2012, when according to Kisner's testimony, that morning they woke up and began arguing. Buckner eventually choked Kisner, hit her in the head, and ripped apart the shirt she was wearing, prompting Kisner to leave and go to her next-door neighbor's house for help. Kisner, dressed only in a pair of jeans and a bra, asked her neighbors to call the police. Kisner then went back to her house to collect her clothes and cellular phone. When Kisner approached, Buckner forcibly dragged Kisner back into the house as one of the neighbors watched.

Kisner's neighbors, Laban Booth and his daughter Meranda Snodgrass, corroborated Kisner's testimony. Booth testified that when Kisner came to his house and asked him to call the police, she stated her boyfriend was "beating the hell out of her." Booth also testified that Kisner had red marks on her chest, arms, and neck. Booth called the police.

Snodgrass testified that when she went outside she observed that Kisner was crying and telling Buckner to stop as she held on to the porch railing. Eventually, Buckner grabbed Kisner by the waist, lifted her feet off the ground, and dragged her inside the house.

When Officer Jeff Wade arrived, Booth and Snodgrass told him that Kisner was inside her house screaming. After gaining entry to Kisner's house, Wade observed red marks and scratches on Kisner's chest, forehead, and the back of her neck and shoulder

3

area. Kisner originally attributed these marks to a breakout of hives but later admitted to Wade that once Buckner forced her inside the house, he became physically violent again and threatened her. Officer Dallas Ryan testified that he noticed a broken oscillating fan and a pushed-over bookcase in the living room. He also stated that Kisner was wearing only jeans and a bra and had redness on her chest and the back of her neck.

The State ultimately charged Buckner in 12 CR 443 with (1) aggravated kidnapping, (2) domestic battery, (3) disorderly conduct, and (4) aggravated battery.

C.    *Third Incident—13 CR 275*

By August 17, 2013, Kisner and Buckner had broken up. Kisner had moved to Kismet, Kansas; her friend, Gayle Glenn, lived with her. Kisner and Glenn had plans to spend time together that night in Liberal. Glenn went to Liberal before Kisner to secure a hotel room in case they decided to stay the night. Kisner had been communicating with Buckner throughout the day and had arranged to meet Buckner before joining Glenn so that Buckner could give Kisner money he owed. Kisner met Buckner in her car at a park, and she drove him around the city.

While driving, Kisner was communicating with Glenn via cellular phone, telling her that she would meet her soon. When Buckner learned that Kisner planned to spend time with Glenn that night, he became angry and punched her in the back of the head several times with his closed fist. Kisner testified that the blows made her feel sick and dizzy. Buckner told her to drive him to her house in Kismet, Kansas, but Kisner did not want to so she pulled into a parking lot. Kisner testified that she stopped in the parking lot because she "didn't feel right" and thought she might be able to escape from Buckner.

After stopping in the lot, Kisner opened the driver-side door of her car, but Buckner physically prevented her from leaving. He pulled her back by her hair, wedged

4

her between the driver and front-passenger seats, and hit her face multiple times with his closed fist. Eventually, Buckner pulled Kisner up from between the seats. He said, "Oh my god, look at your face," exited the car, and left the scene on foot.

Kisner then drove to the motel where Glenn had rented a room and met Glenn in the parking lot. She testified that she could not see well while driving due to the blood in her eyes. She went into Glenn's motel room, looked in the mirror, and observed that her right eye was cut open, she could see her teeth through her lips, and her nose and face were completely swollen. Glenn drove Kisner to the hospital where Kisner received approximately 40 stitches on the inside and outside of her mouth. The bones of her right eye orbit were broken as were many areas on the right side of her face, and she had a concussion. At the time of the trial, Kisner stated she still suffered memory loss, anxiety, and post-traumatic stress disorder stemming from the attack.

Kisner initially lied to police about who hurt her until Kisner learned that Glenn had told police that Buckner was the one who had hurt her.

Based on the third incident, the State charged Buckner with (1) aggravated kidnapping, (2) aggravated battery, and (3) domestic battery.

D.     *Proceedings before the district court*

Prior to trial, the State moved to consolidate the three cases, which the district court granted over Buckner's objection, and the cases were tried together. Buckner requested that the jury be instructed on kidnapping as a lesser included offense of the aggravated kidnapping charge and on criminal restraint as a lesser included offense of the kidnapping charge. The district court denied Buckner's request.

5

In 13CR61, at the close of the State's case, the district judge directed the verdicts on the counts of criminal threat and intimidation of a witness, dismissing them both. The jury acquitted Buckner of rape but convicted him of domestic battery and criminal restraint. In 12 CR 443, at the close of the State's case, the district court amended the aggravated kidnapping charge to kidnapping and dismissed the charges of disorderly conduct and aggravated battery on a directed verdict. The jury convicted Buckner of kidnapping and domestic battery. In 13 CR 275, the jury convicted Buckner on all three counts as charged.

Using the criminal history of each case against the others, the district court calculated Buckner's criminal history score as A. In 13 CR 61, the district court sentenced Buckner to 12 months' incarceration for criminal restraint and 6 months' incarceration for domestic battery. In 13 CR 275, the district court sentenced Buckner to 653 months' incarceration for aggravated kidnapping, 61 months' incarceration for aggravated battery, and 6 months' incarceration for domestic battery, with the aggravated battery sentence to run consecutively to the aggravated kidnapping sentence. Finally, in 12 CR 443, the district court sentenced Buckner to 247 months' incarceration for kidnapping and 6 months' incarceration for domestic battery, with the domestic battery sentence to run concurrently with the kidnapping sentence. The district court ordered that the sentences in each case run consecutively to each other, resulting in a 973-month total sentence.

Buckner timely appeals.

### DID THE DISTRICT COURT PROPERLY DENY BUCKNER'S REQUEST FOR LESSER INCLUDED INSTRUCTIONS ON THE AGGRAVATED KIDNAPPING AND KIDNAPPING CHARGES?

Buckner contends the district court erred in not granting his request for a lesser included instruction of kidnapping as to the aggravated kidnapping charge and a lesser

6

included instruction of criminal restraint as to the kidnapping charge. Buckner claims there were sufficient facts for the jury to have found that his actions did not rise to the level of aggravated kidnapping in 13 CR 275 or kidnapping in 12 CR 443. These errors, according to Buckner, require us to reverse his convictions and remand the cases for a new trial.

When the failure to give a lesser included offense instruction is challenged on appeal, we apply the analytical framework for jury instruction issues. *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014). When an offense includes a lesser included crime, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2015 Supp. 22-3414(3). *State v. Molina*, 299 Kan. 651, 661, 325 P.3d 1142 (2014). Thus, ""'where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . , the judge *shall* instruct the jury as to the crime charged and any such lesser included crime."'" (Emphasis added.)" *Armstrong*, 299 Kan. at 432 (quoting *State v. Williams*, 295 Kan. 506, 521-22, 286 P.3d 195 [2012]). ""'"[T]he standard of review is whether, after review of all the evidence viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty [of the lesser crime].'" [Citations omitted.]'" 299 Kan. at 433.

First, we note Buckner's proposed instructions were legally appropriate because kidnapping is a lesser included offense of aggravated kidnapping, see *State v. Simmons*, 282 Kan. 728, 742, 148 P.3d 525 (2006), and criminal restraint is a lesser included offense of kidnapping. *State v. Ramirez*, 299 Kan. 224, 233, 328 P.3d 1075 (2014). Thus, the question we must answer is whether each instruction would have been factually appropriate.

With respect to the aggravated kidnapping charge in 13 CR 275 and the failure to give the lesser included offense instruction of kidnapping, Buckner does *not* dispute that

7

Kisner suffered bodily harm during the events giving rise to the aggravated kidnapping charge. He merely argues on appeal that there was evidence to support the lesser included offense of kidnapping. Buckner's defense theory at trial, however, was that he simply did not commit the crimes. Therefore, given the evidence, the jury had the opportunity either to believe Buckner and acquit him or to believe the incriminating evidence and find Buckner guilty of aggravated kidnapping. The evidence at trial excluded the lesser included offense of kidnapping due to the serious bodily harm Kisner suffered while confined in the car, an element of aggravated kidnapping. The lesser included offense instruction was not factually appropriate because the jury was never presented a version of the events where Kisner was kidnapped without any accompanying bodily harm. Therefore, the district court did not err in rejecting Buckner's request that the jury be instructed on kidnapping as a lesser included offense of aggravated kidnapping. See *Simmons*, 282 Kan. at 743 (instructing jury on lesser included offense of kidnapping not warranted because jury could not have reasonably convicted defendant of kidnapping).

As to the kidnapping charge in 12 CR 443 and the rejected lesser included instruction of criminal restraint, the circumstances are the same. Kidnapping and criminal restraint require similar facts, and our Supreme Court recently explained that "[k]idnapping is simply graded higher [than criminal restraint], *i.e.*, involves more culpability, because it requires the perpetrator to effect the restraint or confinement by force, threat, or deception with the specific intent to accomplish a particular illegal purpose." *Ramirez*, 299 Kan. at 231. Criminal restraint, by contrast, does not require that the confinement be effectuated through force, threat, or deception, and instead "'substantially replicates the common-law offense of false imprisonment.'" 299 Kan. at 231 (quoting *State v. Ramirez*, No. 102,421, 2011 WL 2793219, at *15 [Kan. App. 2011] [unpublished opinion]).

Kisner testified that Buckner dragged her inside her house after she left to get help, and Snodgrass testified that Buckner pulled Kisner inside the house while Kisner

8

attempted to hang on to the porch railing. Buckner did not specifically refute their testimony, thus the evidence that Buckner used force to effectuate the restraint upon Kisner went uncontroverted at trial. Again, the jury had the choice of either believing that Buckner did not commit the crime and acquit him or believing testimony that Buckner effectuated Kisner's confinement through force constituting kidnapping. No evidence was presented supporting a conviction for the lesser included offense of criminal restraint. Therefore, the criminal restraint instruction would not have been factually appropriate, and the district court correctly declined to include it in the jury's instructions.

DID THE DISTRICT COURT NEGATE THE JURY'S RIGHT TO NULLIFY
BUCKNER'S CONVICTIONS WHEN IT DENIED BUCKNER'S
REQUEST FOR LESSER INCLUDED OFFENSE INSTRUCTIONS?

Next, Buckner argues the district court's failure to instruct the jury on the lesser included offenses of kidnapping and criminal restraint amounted to a negation of the jury's right to nullify his convictions. Buckner concedes that he did not object to the omission of the lesser included offense instructions on this ground before the district court. Accordingly, we are required to examine the district court's failure to give such lesser included instructions for clear error. *State v. Cameron*, 300 Kan. 384, 388, 329 P.3d 1158 (2014).

Under the clear error standard, we again must determine first whether Buckner's proposed instructions were both legally and factually appropriate. If so, then a review of the entire record must be done to make a de novo determination of whether we are firmly convinced that the jury would have reached a different verdict had the instructional error not occurred. See *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014).

9

Unfortunately for Buckner, and as we analyzed in the previous section, Buckner's proposed jury instructions were not factually appropriate, meaning the district court did not err in rejecting them. Moreover, we observe that Buckner's assertion that the failure to give these lesser included instructions prevented the jury from exercising its right to nullify presumes there was sufficient evidence to support his lesser included instructions. Because Buckner's proposed instructions were not factually appropriate, no error occurred, and the possibility of reversal on any rationale is foreclosed.

## DID THE DISTRICT COURT PROPERLY INSTRUCT THE JURY ON THE STATE'S BURDEN OF PROOF?

Next, for the first time on appeal, Buckner argues that the language in the standard Pattern Instructions for Kansas (PIK) instruction defining the State's burden of proof in his case—"If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find Mr. Buckner guilty" (emphasis added)—was inappropriate because the word "should" negated the jury's right to nullify his conviction. Buckner contends the instruction should have provided: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *may* find Mr. Buckner guilty."

"A party cannot claim error for the district court's giving . . . a jury instruction unless (1) that party objects before the jury retires . . . , stating distinctly the matter to which the party objects and the grounds for objection; or (2) the instruction . . . is clearly erroneous." *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). We use a two-step process in determining whether the challenged instruction was clearly erroneous. First, we must determine if there was any error at all by considering whether the instruction at issue was both legally and factually appropriate, employing an unlimited review of the entire record; second, if we find error, we must assess whether we are firmly convinced

10

the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. at 408.

Our analysis begins with the question of whether Buckner's proposed jury instruction was legally appropriate. Buckner contends the word "may" should have been substituted for the word "should" when the district court instructed the jury on the State's burden of proof. To do otherwise, Buckner argues, precluded the possibility of jury nullification.

Jury nullification is:

"'[a] jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.' Black's Law Dictionary 875 (8th ed. 2004)." *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173 P.3d 1167, *rev. denied* 286 Kan. 1180 (2008).

In *State v. Allen*, No. 112,780, 52 Kan. App. 2d ___ (2016), another panel of this court recently assessed whether replacing "should" with "may" in the reasonable doubt instruction is legally appropriate. Like in our case, the instruction given mirrored the PIK Crim. 4th 51.010. The panel explained:

"Although the use of PIK instructions is not required, it is strongly recommended, as those instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. 'Absent a particular need under the facts of a case to alter . . . PIK instructions, they should be followed.' *State v. Acevedo*, 49 Kan. App. 2d 655, 663, 315 P.3d 261 (2013), *rev. denied* 300 Kan. 1104 (2014). So we must determine whether the PIK instruction is legally inappropriate.

11

"It is undisputed that criminal defendants are not entitled to have the jury instructed on its inherent power of nullification—the power to disregard the rules of law and evidence in order to acquit the defendant based upon the jurors' sympathies, notions of right and wrong, or a desire to send a message on some social issue. Our Supreme Court has clearly stated:

> "'The administration of justice cannot be left to community standards or community conscience but must depend upon the protections afforded by the rule of law. *The jury must be directed to apply the rules of law to the evidence* even though it must do so in the face of public outcry and indignation. Disregard for the principles of established law creates anarchy and destroys the very protections which the law affords an accused. Finally, to permit a jury to disregard the principles of law laid down by a trial court is contrary to the statutory law of this state. [Citation omitted.]
>
> . . . .
>
> "'Although it must be conceded that the jurors in a criminal case have the raw physical power to disregard both the rules of law and the evidence in order to acquit a defendant, *it is the proper function and duty of a jury to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon.*' (Emphasis added.) *State v. McClanahan*, 212 Kan. 208, 216-17, 510 P.2d 153 (1973).

"The Supreme Court reiterated this same stance in *State v. Naputi*, 293 Kan. 55, 260 P.3d 86 (2011), where it found that juries should not be instructed on nullification because '[i]t is not the role of the jury to rewrite clearly intended legislation, nor is it the role of the courts to instruct the jury that it may ignore the rule of law, no matter how draconian it might be.' 293 Kan. at 66.

"But our Supreme Court has found error when a jury was instructed that "'[i]f you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty." (Emphasis added.)' *State v. Smith-Parker*, 301 Kan. 132, 163, 340 P.3d 485 (2014). The

12

Supreme Court found that '[a]lthough we have rejected a defense argument that a criminal jury should be instructed on its inherent power of nullification [citation omitted], the district judge's instruction in this case went too far in the other direction. It essentially forbade the jury from exercising its power of nullification. [Citation omitted.]' 301 Kan. at 164. The Supreme Court determined that the word *will* used in the first-degree murder instruction essentially directed a verdict for the State, and a judge 'cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt.' 301 Kan. at 164. So the issue presented by Allen is whether the term 'should' as used in the reasonable doubt instruction has the effect of directing a verdict for the State on all the charged crimes. We find it does not." *Allen*, 52 Kan. App. 2d ___, Slip Op. at 7-9.

Another panel of this court recently explained best that the word "should" falls short of being an imperative:

"But as every teacher instructing a class knows, and as every parent admonishing a child knows, should is less of an imperative than must or will. See *State v. Pennington*, 254 Kan. 757, 764, 869 P.2d 624 (1994). Nutritionists urge that we all should eat our vegetables. But that does not constitute a directive to have recalcitrant diners force-fed their vegetables if they do not comply. A parent admonishing a child that he should eat his lima beans is clearly less of an imperative than the phrase every child has heard at one time or another, 'You *will* eat your lima beans!' Should as used in this instruction is not the equivalent of 'must' or 'will' used in the instructions discussed in [*State v.*] *Lovelace*[, 227 Kan. 348, 607 P.2d 49 (1980)] and [*State v.*] *Smith-Parker*[, 301 Kan. 132, 340 P.3d 485 (2014)]. *Should* is advisory. It is not an imperative. The district court did not err in giving this instruction." *State v. Singleton*, No. 112,997, 2016 WL 368083, at *6 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* February 26, 2016.

Other panels of our court have followed this logic. See, *e.g.*, *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *2 (Kan. App. 2016) (unpublished opinion); *State v. Ford*, No. 112,877, 2016 WL 2610259, at * 9 (Kan. App. 2016) (unpublished opinion); *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4-5 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* April 1, 2016; *State v. Jones*, No. 111,386, 2015 WL

13

4716235, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. ___ (February 18, 2016).

We hold that Buckner's proposed jury instruction would not have been legally appropriate, and the district court properly instructed the jury.

### DID THE DISTRICT COURT PROPERLY SENTENCE BUCKNER USING AN ELEVATED CRIMINAL HISTORY SCORE?

Finally, Buckner argues the district court erroneously increased his criminal history score when it used the crimes in each of the consolidated cases to increase his criminal history score in the other consolidated cases, resulting in Buckner being sentenced with a criminal history score of A in each case. Specifically, Buckner contends that K.S.A. 2015 Supp. 21-6810(a) precludes the district court from increasing his criminal history score in this manner. Answering this question requires us to interpret the statute, which is a question of law over which we have unlimited review. See *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

Although Buckner made no objection to the calculation of his criminal history score during sentencing, we may address the merits of Buckner's argument because calculating a sentence with an incorrect criminal history score constitutes an illegal sentence, and an illegal sentence may be corrected at any time. K.S.A. 22-3504(1); *State v. Donaldson*, 35 Kan. App. 2d 540, 541-42, 133 P.3d 154 (2006).

The three cases against Buckner were consolidated pursuant to K.S.A. 22-3203. At sentencing, the district court used Buckner's convictions from all three cases to elevate his criminal history score to an A in each case and sentenced him accordingly. The district court erred, however, because K.S.A. 2015 Supp. 21-6810(a) plainly excludes crimes charged in multiple complaints which have been joined for trial from constituting

14

prior convictions for the purposes of calculating a criminal history score. The State concedes that Buckner must be resentenced due to this error.

Accordingly, for the reasons stated above, we affirm Buckner's convictions, vacate Buckner's sentence, and remand this case to the district court for recalculation of Buckner's criminal history score and resentencing.

Affirmed in part, vacated in part, and remanded.